## UNITED STATES v. KORDEL.

### No. 9151.

Circuit Court of Appeals, Seventh Circuit.
Nov. 6, 1947.

Rehearing Denied Jan. 30, 1948.

914

James W. Breen, of Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., and Robert C. Eardley, both of Chicago, Ill., William W. Goodrich, of Washington, D. C., Theron L. Caudle, Asst. Atty. Gen., and J. Albert Woll, U. S. Atty., of Chicago, Ill. (Vincent A. Kleinfeld, Atty., Dept. of Justice, of Washington, D. C., of counsel), for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Appellant was charged by three criminal informations with violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq. He waived jury trial and, upon trial by the court, was found guilty and fined $200 on each of the twenty counts contained in the three informations. The appeal is from those judgments.

The facts as to the shipping of the drugs and the literature alleged to constitute the misbranding charged in the informations were entirely stipulated. Error is asserted in the court's finding that that literature "accompanied" the drugs in interstate commerce in the purview of the Act prohibiting the introduction or delivery for introduction of any drug that is misbranded. Other contested issues relate to the degree of proof necessary in a criminal proceeding under the Act, whether the Act should be strictly construed, and whether prosecution should have been by indictment rather than by information.

Appellant is a self-styled authority on nutrition and vitamins. He testified that he had written many papers on the subject of vitamins, herbs, minerals and nutritional diet subjects in general, securing the material for preparation of his papers from books. Operating under various trade names, he had been producing and marketing his own products since January 1941, largely through "health food" stores. The products appear to be, for the most part, compounded of various vitamins, minerals, and herbs. No charge of falsehood is made as to the principal labels printed on the packages in which each is contained. These labels give the name of the article and distributor, content, recommended dosage, and, in some cases, the alleged daily minimum requirement of the vitamins or minerals therein. Otherwise they give no indication

as to their intended uses.[1] The misbranding charged is contained in a number of printed pamphlets and circulars, and one display placard. The modes of distribution of this literature differed as charged in the various counts of the informations. In some cases it was contained in the carton in which the articles were shipped. More often, it was separately shipped to the same consignees, and, in at least one case, a period of a year and a half intervened between the shipment of the product and the literature, respectively.

Section 301 of the Food and Drugs Act, as enacted in 1938, 21 U.S.C.A. § 331, prohibits the introduction or delivery for introduction into interstate commerce of any drug that is misbranded; section 502, 21 U.S.C.A. § 352, provides that a drug shall be deemed to be misbranded if its labeling is false or misleading in any particular; and section 201(m), 21 U.S.C.A. § 321(m), defines the term "labeling" to include all labels and other written, printed, or graphic matter "(1) upon any article or any of its containers or wrappers, or (2) accompanying such article."

█ It is now generally held that in order to support a misbranding charge under the Act as amended and revised in 1938, it is not necessary that the matter alleged to accompany the product be shipped in the same container (United States v. Research Laboratories, 9 Cir., 126 F.2d 42), nor even that it be shipped simultaneously. United States v. Lee, 7 Cir., 131 F.2d 464, 143 A. L.R. 1451; United States v. 7 Jugs, etc., Rakos, D.C., 53 F.Supp. 746; United States v. Paddock, D.C., 67 F.Supp. 819.

█ Appellant contends that the cases referred to are not applicable for the reason that all involved civil proceedings rather than criminal, and further, that the literature here involved was not only not shipped in the same carton with the products in all cases, but neither was it intended by him that product and literature should be placed together by the dealer to whom they were sent. His theory apparently is that the matter was not intended for labeling, but for advertising. He points to the fact that all of the printed matter was intended either to be mailed out or to be sold, as indicated by the fact that with the exception of the one display placard, each piece either contained a price mark or a mailing permit with space for address. This, he contends, supports his theory that product and literature were not to be distributed together, hence cannot be said to accompany each other.

We find two answers to this contention. In the first place, labeling and advertising are not mutually exclusive, and the same matter may serve both purposes. As the Court of Appeals for the Ninth Circuit states in United States v. Research Laboratories, 9 Cir., 126 F.2d 42, 45, "Most, if not all, labeling is advertising. The term 'labeling' is defined in the Act as including all printed matter accompanying any article. Congress did not, and we cannot, exclude from the definition printed matter which constitutes advertising." See also United States v. Paddock, D.C., 67 F.Supp. 819. In the second place, the placing of the mailing permit or the price tag on the literature cannot insulate appellant from liability for introducing the drugs and their related descriptive matter into interstate commerce together by consignment to the same consignee for distribution by him. The evidence is clear that the booklets were actually displayed on racks close to the counter where the products were sold and that they were necessary to inform the purchasing public of the uses to which these products were to be put.

█ We agree with appellee that "the correct concept of 'accompaniment' is one of a commercial or business association." As stated in the Rakos case, supra [53 F. Supp. 754], "misbranding has true significance only in terms of the consumer. * * * 'Accompany' as used in this Act is used to describe a relationship between an article of drug and its labeling. Since there 'can be no question that among the usual characteristics of labeling is that of informing a purchaser of the uses of an article to which the labeling relates' (citing the decision of this

---

[1] The articles involved in the three informations are named "Gotu Kola," "Minerals plus Chlorophyll and Vitamin D," "Cetabs," "Fenugreek Tea," "Fero- B-Plex," "Bolax," "Ormotabs," "Ribotabs," "Kordel Tablets," "Everm," "Kordel A," "Garlic Plus," "Niamin," and "Sarsaparilla Tea."

court in United States v. Lee, supra) the booklets here involved should be scrutinized from this viewpoint. In the sense just stated, if the booklets are not labeling, then the products * * * have none."

We, too, are convinced that the test is not of physical contiguity but of textual relationship. Viewed thus, the products and literature here involved were interdependent because without the latter, the former lacked the labeling necessary to inform the purchasing public of their uses and purposes—it is significant that the labels printed on the immediate containers did not indicate the purposes for which the articles were to be used. Hence, the literature was intended and essential to explain the alleged uses of the products. They constituted a supplement to the label physically attached to the product container. One of the health food dealers in whose store the Kordel products were sold admitted that if he were buying one of the products he would have to go to "reliable sources" to know to what use to put the product. Presumably those reliable sources were the booklets displayed in racks close by the counter where the drugs were dispensed or lying on the counters where they were available to the public and could be picked up and examined. Some also were wrapped with merchandise or handed to customers.

We agree with the District Court that, because the literature was shipped by appellant or at his order, to the same consignees as the products, related to those products, and was intended to be distributed in relation to them, it did accompany the products into interstate commerce within the definition of the Act. To hold otherwise would be to permit evasion of the Act by the very easy subterfuge of printing a purchase price or a mailing permit on advertising matter otherwise unquestionably accompanying products into interstate commerce.

With respect to the misrepresentations contained in the accompanying literature we think there can be no serious question. The two booklets, "Nutrition Guide," and "What you can do about relieving the agonies of Arthritis," were written by appellant who, in the latter, is described as "America's leading vitamin and diet expert." "Health Today, Spring 1945," is edited by the same "famous nutrition and vitamin authority." While all purport to be scientific publications of general interest apart from the articles produced and marketed by appellant, written by an expert in the field, in fact, all are replete with references to the Kordel products and their uses to prevent, ameliorate or cure a vast and diverse variety of ailments, and each conveniently closes with a price list of the various Kordel products recommended for use therein. All are concerned primarily with promoting the sale of the various products by explaining the need for each, along with extravagant claims as to the usefulness of each. A study of the three pamphlets reveals that the products therein described are recommended for relieving stomach agonies, general weakness, anemia, premature old age, high blood pressure, liver troubles, failing eyesight, sore feet; maintaining blood energy, muscular activity, sound teeth and gums, healthy skin, hair and eyes, normal functioning of the pituitary and thyroid glands, stomach, intestines, colon, liver and kidneys; and preventing arthritis and stiff joints, excess weight, catarrh, nervous breakdown, sterility, and paralysis.

Thus the scheme devised by appellant for the distribution of his products and related literature contemplates an elaborate system of self-diagnosis and medication. The danger inherent in this system lies not in any positive unwholesomeness of the articles themselves. As to them as such there is no charge and it may be that they are quite harmless in and of themselves. The danger however, lies in the fact that ignorant and gullible persons are likely to rely upon them instead of seeking professional advice for conditions they are represented to relieve or prevent. The Government introduced the evidence of many very eminent men in the medical profession to prove the dangerously misleading character of the literature in that the drugs were useless to combat the conditions they were represented to relieve, while delay in correct diagnosis and treatment for those conditions might render treatment useless. As one of them stated, the literature encouraged people to experiment with themselves and that meant they were gambling with their

health and life. He branded as scientifically ridiculous and nonsensical various of the claims and, when asked whether he would say that the products in themselves were harmful, replied, "They are definitely harmful in that they encourage a patient with a serious disease to experiment with himself when he should seek medical advice and precise diagnosis and therapy."

All were agreed that while the claims were absurd and fantastic, they were dangerous in that they tended to lull people into a false sense of security in reliance on the drugs when they might need professional diagnosis and treatment for conditions which might respond to treatment if correctly diagnosed early enough, but which might become much more serious if not taken care of early. Since the literature which we have already held accompanied the products embodies such misleading representations, it constitutes misbranding within the meaning of the Act.

Appellant contends that, since the current proceedings are criminal, he is entitled to a strict construction of the Act, with proof of the violation, if any, beyond a reasonable doubt. Courts for a long time have been committed to the doctrine of giving statutes intended to protect the public health a very liberal construction. As stated in Sutherland on Statutory Construction (Vol. III, sec. 7202), "The public and social purposes served by such legislation greatly exceed the inconvenience and hardship imposed upon the individual, and therefore the former is given greater emphasis in the problems of interpretation. Therefore the courts are inclined to give health statutes a liberal interpretation despite the fact that such statutes are primarily penal in nature and frequently impose criminal penalties." To the same effect is the ruling in United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48, where the Court said, "The prosecution to which Dotterweich was subjected is based on a now familiar type of legislation whereby penalties serve as effective means of regulation. Such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing."

We think there can be no doubt of the sufficiency of the evidence to sustain the charge beyond a reasonable doubt.

Appellant strongly relies upon Alberty v. United States, 9 Cir., 159 F.2d 278, to sustain his proposition that booklets and the like, not shipped at the time of the articles, do not "accompany" the article when they are introduced or offered for introduction into interstate commerce, and consequently cannot "then and there" misbrand them. The Circuit Court of Appeals for the Ninth Circuit there reversed an order overruling a demurrer to an information and remanded the cause with directions to dismiss the information. It distinguished three of the cases to which we have referred (United States v. Research Laboratories, United States v. 7 Jugs, etc., Rakos, and United States v. Lee), on the ground that all involved civil proceedings and construed the Act liberally. We have already indicated that under the authorities cited, we do not consider the distinction applicable to the construction of the statute here involved. To the extent that the court limits the definition of the word "accompany" to mean only physical association and contiguity, we do not agree with its reasoning and are convinced that it is not in harmony with those authorities.

We find no merit in appellant's contention that he should have been prosecuted by indictment rather than by information. Section 303(a) upon which the informations were based, 21 U.S.C.A. § 333(a), provides that any person violating any of the provisions of section 201 shall be guilty of a misdemeanor, and subject to imprisonment for not more than one year or a fine of $1,000 or both, unless he has already been convicted of a prior offense under the same section. The charges were brought under this section. That being the case, there was no necessity for prosecution by indictment. See United States v. J. Lindsay Wells Co., D.C., 186 F. 248 (holding violation of the 1906 Food and Drugs Act, 21 U.S.C.A. § 1 et seq., not an infamous crime). See also Falconi v. United States, 6 Cir., 280 F. 766, and cases there cited.

Judgments affirmed.