## FEDERAL TRADE COMMISSION v. LIG-GETT & MYERS TOBACCO CO.

United States District Court
S. D. New York.
Dec. 1, 1952.

Daniel J. Murphy, Chief,. Division of Litigation, Bureau of Anti-Deceptive Practices and Frederick McManus, Trial Attorney, Washington, D. C., for plaintiff.

Simpson, Thacher & Bartlett, New York City, Whitney North Seymour, Armand F. MacManus and Thomas Thacher, New York City, of counsel, for defendant.

IRVING R. KAUFMAN, District Judge.

The Federal Trade Commission has sought to enjoin the dissemination of allegedly false advertising by the Liggett and Myers Tobacco Company pending the issuance of a complaint under Sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C.A. §§ 45, 52. The advertising in question is the defendant's representation

"directly or by implication, that Chesterfield cigarettes can be smoked by any smoker without inducing any adverse affect upon the nose, throat and accessory organs of the smoker."

(Paragraph Six of Complaint). The Commission maintains that Sections 12 and 13 (a) of the Federal Trade Commission Act [1]

1. "Sec. 12. (a) It shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement—

confer jurisdiction upon this court. Liggett and Myers here moves to dismiss the complaint for lack of jurisdiction of subject matter on the ground that the product advertised is not a "drug" within the meaning of Sections 12, 13(a). The contention that cigarettes are within the purview of these sections is a novel one and consideration of the merits of the petition for injunction has, therefore, been reserved until this jurisdictional question is resolved.

Section 15(c) states that for the purposes of Sections 12, 13 and 14 the term "drug" means:

"(1) articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and

"(2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and

"(3) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and

"(4) articles intended for use as a component of any article specified in clauses (1), (2), or (3); but does not include devices or their components, parts, or accessories."

Paragraph Five of the Complaint alleges that tobacco is a drug as "drug" is defined in the Federal Trade Commission Act because:

(a) It is recognized in the official Homeopathic Pharmacopoeia of the United States;

(b) Defendant in advertisements has represented and is representing directly and by implication that Chesterfield cigarettes are manufactured in such a manner as to prevent irritation to the nose, throat and accessory organs of smokers thereof.

By amendment to Paragraph Five of the complaint the Commission seeks to add a third ground:

"(c) Tobacco is an article intended to effect the functions of the body of man.

I shall consider these allegations in the order presented.

## I. Effect of Listing In Homeopathic Pharmacopoeia

The difficulties which confronted the legislative draftsmen who sought to define "drug" are obvious. Realizing that no contemporary listing would suffice resort was

"(1) By United States mails, or in commerce by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, or cosmetics; or

"(2) By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in commerce of food, drugs, devices, or cosmetics.

"(b) The dissemination or the causing to be disseminated of any false advertisement within the provisions of subsection (a) of this section shall be an unfair or deceptive act or practice in commerce within the meaning of section 5.

"Sec. 13. (a) Whenever the Commission has reason to believe—

"(1) that any person, partnership, or corporation is engaged in, or is about to engage in, the dissemination or the causing of the dissemination of any advertisement in violation of section 12, and

"(2) that the enjoining thereof pending the issuance of a complaint by the Commission under section 5, and until such complaint is dismissed by the Commission or set aside by the court on review, or the order of the Commission to cease and desist made thereon has become final within the meaning of section 5, would be to the interest of the public,

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States or in the United States court of any Territory, to enjoin the dissemination or the causing of the dissemination of such advertisement. Upon proper showing a temporary injunction or restraining order shall be granted without bond. Any such suit shall be brought in the district in which such person, partnership, or corporation resides or transacts business."

had to the three reference works. The issue then is whether smoking tobacco as exemplified by Chesterfield cigarettes falls within the category listed in the Homeopathic Pharmacopoeia. Tobacco does not appear in either the United States Pharmacopoeia or the National Formulary.

The defendant contends that since "cigarettes" as such are not listed in the Pharmacopoeia, this, by itself, is sufficient to render inapplicable this provision. I don't agree with this. Surely, if smoking tobacco is a drug the manner in which it is packaged, and what it is called after packaging, is, in this instance, of no greater significance than the difference between some other drug preparation in pill or powder form.

While it is true that the Homeopathic Pharmacopoeia of the United States (6th Ed.Rev.1941) p. 546 lists tobacco, it does not stop with the mere mention of "tobacco". Several paragraphs follow the listing of tobacco with the following headings: "Description" — "Habitat" — "History" — "Part Used" and "Preparations". It is only after an examination of each of those paragraphs that one can determine whether the listing was intended to cover all derivatives of the tobacco plant.

I am led to the inescapable conclusion that tobacco was listed in the Homeopathic Pharmacopoeia solely because it was the source of a preparation known as "tincture of tobacco". This preparation is described in the Pharmacopoeia as follows:

"Preparations.

"a. Tincture of Drug strength $\frac{1}{10}$

Tabacum, in coarse powder, 100 Gm.
Distilled water, a sufficient quantity in this proportion, 200 Cc.
Strong alcohol, a sufficient quantity in this proportion, 824 Cc.
To make one thousand cubic centimeters of tincture.

"b. Dilutions: 2x and higher, with dispensing alcohol.

"c. Medications: 2x and higher."

No indication is given of the uses to which tincture of tobacco was put but, judging by its ingredients, it was a preparation far removed in form and purpose from the ordinary cigarette.

I conclude, therefore, that the listing of one derivative of the tobacco plant in the Homeopathic Pharmacopoeia does not warrant a holding that smoking tobacco—in cigarettes in general and Chesterfield cigarettes in particular—another derivative of that plant, is also included therein.

II. Allegation That Cigarettes "Prevent Irritation".

The Commission's second allegation is that

"Defendant in advertisements has represented and is representing directly and by implication that Chesterfield cigarettes are manufactured in such a manner as to prevent irritation to the nose, throat and accessory organs of smokers thereof."

If this allegation were construed as a charge that the defendant affirmatively claimed a therapeutic purpose for Chesterfield cigarettes we would be confronted with a question of fact which would have to await trial. But this is not the case here. It is true, that cigarettes have, in the past, been placed on the market and advertised as having therapeutic purposes. See United States v. 46 cartons, more or less, each containing 10 packages of an article of drug labeled in part: Fairfax Cigarettes, D.C. N.J.1952.[1] However, that is toto caelo from a representation by the defendant of a "non-adverse" rather than beneficial effect. Thus, the Commission in its brief, p. 6, urges:

"The defendant is claiming for its Chesterfield cigarettes a quality allegedly not attributable to other cigarettes, the quality of non-irritation of the nose, throat and accessory organs. And the inescapable conclusion is therefore that the defendants have so compounded their product as to eliminate, prevent or certainly mitigate the usual irritation that is caused by tobacco smoke, including cigarette smoke."

1. Motion to dismiss pending.

Further, Paragraph Six of the complaint states, in part:

"In said advertisements defendants · represented, directly or by implication, that Chesterfield cigarettes can be smoked by any smoker without inducing any adverse affect upon the nose, throat and accessory organs of the smoker."

So construed, the issues raised by this allegation and those presented by the third charge, which the Commission seeks to add by amendment, are substantially the same.

### III. Allegation That Cigarettes Are "Intended To Affect The Functions Of The Body Of Man."

Paragraph Six of the complaint alleges that

"the smoke from Chesterfield cigarettes is an irritant to the mucous membrane of the nose, throat, Eustachian tubes, sinuses, larynx and trachea."[2]

The third statutory definition of a "drug" is by far the broadest. Anything which stimulates any of the senses may be said, in some perhaps insignificant degree, to affect the functions of the body of man. Consequently any article which, used in the manner anticipated by the manufacturer thereof, comes into contact with any of the senses may be said to be an article "intended to affect the functions of the body of man". (Overusage of many articles may have adverse effects but it is questionable whether the effects of overusage may be considered intended effects.)

Surely, the legislators did not mean to be as all-inclusive as a literal interpretation of this clause would compel us to be.[3]

Our question is whether Congress intended to include articles which affect the functions of the body of man in the manner in which cigarettes affect those functions. But

"When we ask that Congress 'intended,' usually there can be no answer, if what we mean is what any person or group of persons actually had in mind. Flinch as we may, what we do, and must do, is to project ourselves, as best we can, into the position of those who uttered the words, and to impute to them how they would have dealt with the concrete occasion. He who supposes that he can be certain of the result, is the least fitted for the attempt."

L. Hand, J., in United States v. Klinger, 2 Cir., 1952, 199 F.2d 645. With this admonition in mind, we must nevertheless proceed to discover the legislative intent.

■ Resort may appropriately be had to the legislative history of Sections 1, 201 (g) of the Food and Drug Act, 21 U.S.C.A. Sections 301, 321(g), which employs the identical definition of "drug" as that found in Section 15(c) of the Federal Trade Commission Act. Senator · Copeland, in explaining the inadequacies of the previous definition of "drug" stated:

"It also permits the escape of preparations which are intended to alter the structure of some function of the body, as, for example, preparations intended to reduce excessive weight."

78th Cong.Rec. 8960, 73rd Cong:, 2d Sess. (1934).

The report from the Committee on Commerce on S–5, 74th Cong., 1st Sess. (1935) also cites "slenderizers" as an example of the type of. article which the expanded definition was designed to encompass. · These products have very decided effects upon the structure of the body and the very purpose for which the product is consumed is to bring about such effects.

The Commission asserts that the defendant alleges a "soothing" property and that cigarettes are advertised and bought with

---

2. The plaintiff submits, in opposition to the motion to dismiss, affidavits by medical authorities which seek to demonstrate that smoking has adverse effects upon the unhabituated smoker and the smoker who exceeds his limit of tolerance. While this motion should be decided on the pleadings, the plaintiff has asked that these affidavits be considered. For the purpose of this motion I shall assume the correctness of the statements in the affidavits.

3. See footnote 5, infra.

this soothing property in mind. But many things soothe the troubled mind of modern man and I do not feel that this is the type of effect which the statute contemplates.[4]

██ There has been a long history of litigation between the Commission and cigarette advertisers. See e. g. In the Matter of R. J. Reynolds Company, 1950, 46 F.T.C. 706; In the Matter of P. Lorillard Company, 1950, 46 F.T.C. 735. I am conscious of the Commission's failure in the past to treat this type of cigarette advertising under its "drug" powers. This, however, should not in itself be determinative of the question of legislative interpretation. As times and conditions change it is fitting that an administrative agency, before resorting to the legislature, should seek to invoke new means of coping with still unsolved problems. But in its zeal the agency must not exceed the bounds of its statute. The legislative history, such as it is,[5] coupled with indications of contemporaneous administrative interpretation leads me to the conclusion that Congress, had the matter been considered, would not have intended cigarettes to be included as an article "intended to affect the functions of the body of man" or in any other definition of "drug".

██ Since I hold that no "drug" is involved in the sale of defendant's product, the complaint must be dismissed. In view of this disposition, the plaintiff's motion for a temporary injunction will be considered withdrawn without prejudice. Settle order.

---

4. I pointed out upon the argument of the instant motion that a new suit of clothes has a palliative effect and the "soothing" effect of a new bonnet purchased by the fairer sex, should not be overlooked.

5. See also Remarks of Senator Wheeler, 83rd Cong.Rec. 3292–3293, 75th Cong., 3rd Sess. (1938).