**AMP INCORPORATED, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, and James L. Goddard, Commissioner of Food and Drugs, Defendants.**

**No. 67 Civ. 2115.**

United States District Court
S. D. New York.

Sept. 29, 1967.

Curtis, Morris & Safford, New York City, for plaintiff. Jay Louis Seitchik, Harrisburg, Pa., of counsel.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New York City, for defendants. James G. Greilsheimer, New York City, of counsel.

## OPINION

TENNEY, District Judge.

The principal question presented to the Court in this declaratory judgment action is whether certain items manufactured by plaintiff are "drugs" or "devices" within the meaning of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1040 (1938), 21 U.S.C. §§ 301–392 (1964). Plaintiff manufacturer and defendants, the Secretary of Health, Education and Welfare, and the Commissioner of Food and Drugs, have each moved for summary judgment, plaintiff claiming the items are "devices" and the defendants claiming they are "drugs". Both parties agree that there are no facts in issue. The Court is of the opinion that the items are properly characterized as drugs and, accordingly, plaintiff's motion for summary judgment will be denied and the defendants' cross-motion for summary judgment will be granted.

The products in issue are items used by surgeons for ligating or tying bleeding vessels during surgical procedures on the human body. The products consist of (a) a disposable instrument in the form of either a hemostat (clamp) or a long slender tube which is used to locate bleeders and apply a nylon ligature loop and a nylon lock in the shape of a minute button, (b) the nylon ligature loop, and (c) the nylon lock. The ligature consists of a length of filamentary material having a loop at one end for encircling a blood vessel. The "button" serves the function of a knot for maintaining the ligature loop in a tightened position. Under ordinary surgical procedures, a surgeon will tie off all severed vessels by a hand-tied surgeon's knot which is a reef knot.

Plaintiff claims that its products are mechanical instruments, that the nylon ligature loop and the locking device are merely components, parts or accessories thereof, and that therefore the whole product is a device. Defendants argue that plaintiff's hemostat and long slender tube constitute a new and unique method of administering or applying a nylon suture, that a suture is a "drug" within the meaning of the statute and that since such method "is not generally recognized among experts * * * as safe and effective' for use under the conditions * * * recommended" by the manufacturer, it is a new drug under § 201(p) of the Act; 21 U.S.C. § 321(p) and 21 C.F.R. § 130.1(h) (5).

■ To a great extent, there is no difference between the treatment accorded products characterized as "drugs" and those denominated as "devices" under the Act. For example, the adulteration or misbranding of any drug or device is prohibited under sections 301, 501 and 502 of the Act, 21 U.S.C. §§ 331, 351, 352. The same sanctions (injunction, criminal prosecution and seizure) may be invoked as to both drugs and devices pursuant to sections 302, 303 and 304 of the Act, 21 U.S.C. §§ 332, 333, 334. However, a critical difference arises in that section 505 of the Act, 21 U.S.C. § 355, provides that no person shall introduce into interstate commerce a new drug unless an application with respect to the drug has been approved by the Secretary of Health, Education and Welfare. Prior to marketing a new drug commercially, an applicant must show that his product will be safe and effective for its intended use. There is no pre-market clearance requirement for devices; after distribu-

tion of the device, the Government has the burden of proving that the particular item is misbranded.

On January 19, 1966, plaintiff wrote to the Food and Drug Administration requesting classification of its products as drugs, new drugs or devices. (Complt. Exh.C.) By letter dated March 18, 1966, plaintiff was advised that the products were regarded as new drugs. (Complt. Exh.D.) On May 4, 1966, plaintiff filed a "Notice of Claimed Investigational Exemptions", IND No. 3283, pursuant to § 505(i) of the Act, 21 U.S.C. § 355(i).

On November 9, 1966, Dr. William J. Gyarfas, Acting Director of Dental and Surgical Adjuncts of the Food and Drug Administration, met with representatives of plaintiff to discuss the status of IND No. 3283. Plaintiff was advised of various deficiencies and was told that long-term studies concerning the possible cancer-producing effects of the nylon filament and button would be required. (Gyarfas affidavit at ¶ 12.) Plaintiff subsequently decided that its products were devices rather than new drugs and on January 6, 1967, defendants were informed that plaintiff was withdrawing IND No. 3283 for that reason. (Complt. Exh.E.)

■ Plaintiff proceeded to comply with the requirements of the Act relating to devices, and on January 31, 1967 a sample label was sent to the Division of Medical Devices of the Food and Drug Administration. (Complt.Exh.F.) On February 17, 1967, plaintiff was advised of suggested changes in the labeling of the products.[1] However, in a subsequent letter to plaintiff from Dr. Gyarfas on April 26, 1967, plaintiff was again ad-

---

1. Pg. 5. Plaintiff contends that this letter of the Food and Drug Administration constituted "tacit approval" of the characterization of the products as devices (Plaintiff's Statement Under Rule 9(g), ¶ 4), and that plaintiff relied on such statement in marketing the products. The instant complaint does not ask that damages be awarded. In any event, the principle of estoppel cannot be asserted against the Government so that withdrawal of this "tacit approval" will not be actionable. Legerlotz v. Rogers, 105 U.S.App.D.C. 256, 266 F.2d 457, 458 n. 5 (1959), cert. dismissed, 362 U.S. 938, 80 S.Ct. 803, 4 L.Ed.2d 768 (1960); United States v. Ohio Oil Co., 163 F.2d 633, 641 (10th Cir. 1947), cert. denied, 333 U.S. 833, 68 S.Ct. 459, 92 L.Ed. 1117 (1948); United States v. Glens Falls Indem. Co., 152 F.Supp. 840 (S.D.N.Y. 1957); see Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917).

vised that the products were considered drugs and that failure to comply with investigational drug regulations might result in the commencement of regulatory proceedings. Finally, on May 1, 1967, defendants' telegram recalled the February 17, 1967 letter concerning labeling.

In response to defendants' threats of initiation of regulatory action, the products were taken out of interstate commerce and the instant action was commenced. The complaint seeks a declaratory judgment declaring plaintiff's products to be devices and an injunction against enforcement of the "drug" and/or "new drug" provisions of the Act against plaintiff or its ligating products.

Jurisdiction of this action is based on 28 U.S.C. §§ 1331(a), 1337. Defendants concede that the declaratory judgment procedure is a proper one to challenge a final determination of the Commissioner of Food and Drugs. See Abbott Labs. v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 87 S.Ct. 1544, 18 L.Ed.2d 704 (1967); Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697(1967).

*Determination of the Essential Element of Plaintiff's Products.*

As has been hereinbefore stated, plaintiff contends that the nylon loop and the locking device are merely components of the mechanical instruments. Defendants argue that plaintiff's products are actually sutures with the instruments merely being a new method of applying such sutures.

■ The Court is of the opinion that the hemostat or the tube is no more than a container for and method of applying the suture. It is the suture which does the work of tying off the blood vessels and it is the suture which remains in the body. If the suture were physically separate from the mechanical apparatus, this would not result in a loss of suturing effect but would merely alter the manner of administration of the suture.

If the suture itself is considered a drug for the purposes of the Act (the conclusion reached herein), then plaintiff's products are comparable to drugs administered by disposable syringes. The syringe alone is a device when used separately. 1 Toulmin, Foods, Drugs & Cosmetics § 4.13, at 54 n. 2, § 4.33, at 79 (2d ed. 1963). But a drug in a syringe will not become a component of a device or a device for purposes of the Act simply because it is packed for use in such a syringe.

Accordingly, it is the opinion of this Court that the essential element of plaintiff's products is the suture.

*Classification of the Suture as a Drug or Device.*

Section 201(g) of the Act, as amended, 21 U.S.C. § 321(g) defines "drug" as

(A) articles recognized in the official United States Pharmacopeia * * * and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease * * * and (C) articles (other than food) intended to affect the structure or any function of the body * * * and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C) of this paragraph; but does not include devices or their components, parts, or accessories.

Similarly, section 201(h) of the Act, 21 U.S.C. § 321(h) defines "device" as

instruments, apparatus, and contrivances, including their components, parts, and accessories, intended (1) for use in the diagnosis, cure, mitigation, treatment, or prevention of disease * * * or (2) to affect the structure or any function of the body * * *.

It is apparent from the above definitions that the "drug" and "device" definitions contain overlapping elements. Thus, a drug and device are both defined, in part, as items intended "for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" and as items intended "to affect the structure or any function of the body." However, the

"drug" definition includes "articles recognized in the official United States Pharmacopeia. * * *" Additionally, the entire definition of a "drug" is qualified by the statement that it "does not include devices or their components, parts, or accessories." For this reason, both parties argue that the terms are mutually exclusive and an item considered a drug under the Act cannot be a device. Brief for Plaintiff, p. 8; Defendants' Reply to Plaintiff's Statement Under Rule 9(g), ¶ 2. However, "the categories * * * 'drug' and 'device' should not be defined as mutually exclusive." 1 Toulmin, op. cit. supra at § 4.15.

■ The major differences thus appear to be the requirement that a "drug" be listed in an official compendium and the characterization of a "drug" as an "article" and a "device" as an "instrument" "apparatus" or "contrivance". The Act does not define these terms and, consequently, it is necessary to consider their ordinary meaning. See Western Union Tel. Co. v. Lenroot, 323 U.S. 490, 503, 65 S.Ct. 335, 89 L.Ed. 414 (1945). An "article" would be defined merely as a "thing" or "group of things" and would include "instruments, apparatus and contrivances". The definitions of the latter items are somewhat more specific, but all can be classified generally as "appliances".

■■ An examination of plaintiff's suture products reveals that they are arguably either articles or instruments, apparatus and contrivances. It is clear that the products fit into the broad definition of "articles". Less clear is whether such items could fit within the definition of "devices". Assuming *arguendo* that the products fit within both definitions, the remedial nature of the Food, Drug, and Cosmetic Act warrants a liberal construction for the protection of the public health and, thus, a finding that plaintiff's products are drugs. Pasadena

Research Labs., Inc. v. United States, 169 F.2d 375 (9th Cir.), cert. denied, 335 U.S. 853, 69 S.Ct. 83, 93 L.Ed. 401 (1948); United States v. Kordel, 164 F.2d 913 (7th Cir. 1947), aff'd, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948); see United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). The public will be better protected by classifying plaintiff's products as drugs rather than as devices so that proper testing, controlled by the Government, can be pursued. It would seem that where an item is capable of coming within two definitions, that definition according the public the greatest protection should be accepted.

■ Moreover, a "suture" is listed in XVII United States Pharmacopeia 691 (17th rev. ed. 1965). I do not agree with defendants that a listing in an official compendium is the crucial distinction between a drug and device. If this were correct, the clause in § 201(g) of the Act, 21 U.S.C. § 321(g) that the drug definition "does not include devices" becomes meaningless. The mere fact that an item is listed in the United States Pharmacopeia does not necessarily mean that such item is a drug for purposes of the Act. Cf. FTC v. Liggett & Myers Tobacco Co., 108 F.Supp. 573 (S.D.N.Y. 1952), aff'd per curiam, 203 F.2d 955 (2d Cir. 1953). On the other hand, the listing of an item in an official compendium should be some evidence that such item is a drug. The Krantz affidavit submitted by plaintiff is not relevant. Whether the compilers of the United States Pharmacopeia consider a particular item a drug or device given its ordinary meaning does not determine whether such item is a drug or device under the Act.

Accordingly, the Court is of the opinion that in considering the above factors, the necessary conclusion is that plaintiff's products are drugs.[2]

2. Pg. 12. I have taken into consideration H.R. 10725, 90th Cong., 1st Sess. (1967), a Bill introduced June 8, 1967, which would require pre-market clearance where the device is one

intended to be secured or otherwise placed, in whole or in part, within the human body or into a body cavity, or directly in contact with mucous membrane, and is intended to be left in the

### Classification of the Suture as a New Drug.

§ 201(p) of the Act, 21 U.S.C. § 321 (p), provides in pertinent part that a "new drug" is

> (1) Any drug the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof * * *.

21 C.F.R. § 130.1(h) provides in relevant part that

> The newness of a drug may arise by reason (among other reasons) of:
> * * *
>
> (5) The newness of a * * * method * * * of administration * * * prescribed, recommended, or suggested in the labeling of such drug, even though such drug when used in * * * other method * * * of administration * * * is not a new drug.

■ It is admitted that plaintiff's products constitute a new and unique method of administration of the suture. Defendants claim that such administration of the suture is not recognized among qualified experts as safe and effective for use in ligating vessels during surgery in that there may be a carcinogenic reaction to the suture and the button, that the possibility of breakage or slippage after application exists, that such break-

age or slippage would result in internal bleeding, and that problems exist with respect to the maintenance of the sterility of plaintiff's products. Plaintiff alleges that the products have been tested and found safe but there is no allegation that the position taken by the experts within the Food and Drug Administration is unreasonable.

"Where there is a genuine difference of medical opinion among the experts on the question of whether a drug is generally recognized as safe for the treatment of a particular disease, it must be concluded that the drug is not *generally* recognized as safe for use in the treatment of that disease." Merritt Corp. v. Folsom, 165 F.Supp. 418, 421 (D.D.C.1958).

The difference of opinion does not create a material issue of fact which would require the denial of the summary judgment motions. For such difference indicates precisely the lack of general recognition of the safety of plaintiff's products which brings them within the statutory definition of new drugs. United States v. 354 Bulk Cartons * * * Trim Reducing-Aid Cigarettes, 178 F.Supp. 847, 852–853 (D.N.J.1959); Merritt Corp. v. Folsom, supra.

### Conclusions

The Court has determined that the products in issue are sutures and that such sutures are drugs. Since the method of administration of plaintiff's drugs is new and there is lack of general recognition of the safety of the sutures, they must be classified as new drugs.

---

body or such cavity, or in such direct contact, permanently, indefinitely, or for a substantial period or periods.

Plaintiff claims that this Bill would clearly apply to its products and this can only be interpreted to mean that at present, pre-market clearance is not required for the sutures. It would appear that this proposed statute would be inapplicable in the instant case and would apply to those items which are clearly medical devices rather than to products which are arguably drugs

and devices. An example of the former would be a surgical nail used for

stabilizing broken bone fragments. See Orthopedic Equip. Co. v. Eutsler, 276 F.2d 455 (4th Cir. 1960). I might note that in *Eutsler* it was unimportant whether the product was considered a drug or a device since the action was one for mislabeling and the liability which attached was equally applicable to either category. See §§ 301, 501, 502, of the Act, 21 U.S.C. §§ 331, 351, 352. In addition, the product was not listed in an official compendium.

**416**

Accordingly, plaintiff's motion for summary judgment is denied, defendants' cross-motion for summary judgment is granted, and the complaint is dismissed.

It is so ordered.