**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**UNDETERMINED QUANTITIES OF BOTTLES OF AN ARTICLE OF VETERINARY DRUG Labeled in Part: "Pets Smellfree" or "Fresh Pet," and Those Containing Chlortetracycline, Defendant–Appellee,**

**Pets Smellfree, Inc., Claimant–Appellee.**

No. 91–4197.

United States Court of Appeals,
Tenth Circuit.

March 31, 1994.

Deborah S. Smolover, U.S. Dept. of Justice, Civ. Div., Appellate Staff, Washington, DC (Stuart M. Gerson, Asst. Atty. Gen., David J. Jordan, U.S. Atty., Douglas N. Letter, Appellate Litigation Counsel, Leon F. Szeptycki, Atty., Civ. Div., U.S. Dept. of Justice, Washington, DC; and Margaret Jane Porter, Chief Counsel, Denise M. Zavagno, Associate Chief Counsel, Food and Drug Admin., Rockville, MD, were on the brief), for plaintiff-appellant.

George K. Fadel, Bountiful, Utah, for defendant-claimant-appellee.

Before EBEL and HOLLOWAY, Circuit Judges, and COOK,* District Judge.

HOLLOWAY, Circuit Judge.

This case requires us to decide whether a compound sold as an internal pet "deodo-rant," whose only active ingredient is the antibiotic chlortetracycline, is a "drug" as defined by the Federal Food, Drug, and Cosmetic Act ("FDCA" or the Act), 21 U.S.C. §§ 301, *et seq.* The United States brought this appeal from a grant of summary judgment to the defendant-claimant-appellee, Pets Smellfree, Inc. ("PSF").

## I

Pets Smellfree ("Smellfree") is a food additive for animals which purports to diminish pet odors. Its only active ingredient is chlortetracycline calcium complex ("CTC"), an antibiotic compound. Smellfree was advertised as being able to stop pet odors associated with feces, urine, gas, and bad breath. Such odors are typically caused by bacteria. In this *in rem* action, the government seeks the seizure, condemnation, and destruction of all existing Smellfree and an injunction against its further production pursuant to the FDCA on the ground that Smellfree is an adulterated and misbranded drug.[1]

A product is considered adulterated if it is an unapproved new animal drug and misbranded if the company has not registered its facility and the drugs it produces with the Food and Drug Administration ("FDA"). The controlling issue before us is whether Smellfree is a drug because it is "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals," or is an article "intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1)(B), (C).

On cross-motions for summary judgment, the district judge granted summary judgment for PSF and denied the government's motion and dismissed its action. The judge found the labeling, advertising and promotional materials showed no objective intent to treat disease in animals; the product was not intended for such use. Even though PSF may assist the animal in prevention of disease in its mouth, that alone is insufficient

---

* The Honorable H. Dale Cook, United States District Judge for the Northern District of Oklahoma, sitting by designation.

1. The district court had jurisdiction under 21 U.S.C. § 334 and 28 U.S.C. § 1345. Our appellate jurisdiction is granted by 28 U.S.C. § 1291.

to classify PSF as a drug under § 321(g)(1)(B). Memorandum Opinion and Order at 7.

The judge also found error in the FDA determination that PSF is an article intended to alter the structure or function of the animal; the agency action was not a permissible construction of the statute. There is no demonstrated intent literally to change the physical structure or function of the animal's body, and bacteria are not part of its body or structure. Thus, PSF was not intended to change the structure or function of animals within the meaning of § 321(g)(1)(C). *Id.* at 7–8. Finally, the judge held that the small amounts of chlortetracycline calcium complex (CTC) contained in PSF, a mere subtherapeutic dose, does not demonstrate an intent to treat disease under § 321(g)(1)(B).

After the district judge entered judgment, the government filed a motion for reconsideration, which was denied. The government filed a timely notice of appeal which only purported to appeal the denial of its motion for reconsideration. Later the government filed an amended notice of appeal challenging both the denial of its motion for reconsideration and the grant of PSF's motion for summary judgment.

## II

We review a grant of summary judgment *de novo*. *See Applied Genetics, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). In so doing, we examine the record to see whether there were any genuine issues of material fact and, if not, whether the district court correctly applied the substantive law. *See id.* When we review the summary judgment, we look at the record in the light most favorable to the party opposing the motion. *See Adolph Coors Co. v. Brady,* 944 F.2d 1543, 1546 (10th Cir.1991). Moreover, summary judgment **must** be granted when the evidence before the district court demonstrates that the standard of Fed.R.Civ.P. 56 has been met. *See*

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### A.

The central question presented by this appeal is whether Smellfree is a drug under 21 U.S.C. § 321(g)(1). For reasons that follow, we hold that it is. Accordingly, we must reverse the district court's grant of summary judgment to PSF and we remand the case for the entry of summary judgment in favor of the government.

 PSF produced Smellfree in batches of 70 pounds at a time. *See* Declaration of Lloyd W. Beaston ¶ 8, R. at 73. To make one 70 pound batch, PSF mixed one 50 pound package of CtC–50 chlortetracycline premix with 20 pounds of "other" inactive ingredients. *See id.* ¶¶ 7–8, R. at 72–73. CtC–50 is an "antibacterial feed premix for use in the manufacture of feeds" which contains 50 grams of CTC per pound. *See* R. at 186–90 (manufacturer's description and directions for use). Therefore, each pound of Smellfree made in this way contained approximately 35.7 grams of CTC, so that Smellfree consists of approximately 7.6%–7.7% CTC, while the remainder of its ingredients are inactive.[2] *See* Beaston Declaration Ex. 21, R. at 103, Beaston Declaration Ex. 17, R. at 96.

It was uncontested below that the pet odors which Smellfree is claimed to alleviate are usually caused by bacterial contamination. *See* Declaration of Mukund R. Parkhie, D.V.M., M.S., Ph.D. ¶ 7, R. at 55. It is also uncontested that the sole function of CTC is to kill susceptible bacteria. *See* Physicians' Desk Reference 1222 (47th ed. 1993); Affidavit of Stanley Marcus, Ph.D. ¶ 12, R. at 162 (Smellfree "reduce[s] the number of bacteria in the digestive systems and oral cavities of pets"); Affidavit of Thomas H. Jukes, Ph.D. ¶ 8, R. at 195 ("Subtherapeutic doses of [CTC] can be effective in the modification of bacteria in the digestive tract of animals. This modification is accompanied by a lessen-

---

**2.** The fact that the active ingredient of Smellfree comprises less than 10% of the product is irrelevant. In fact, "[t]he active ingredients in most prescription drugs constitute less than 10% of the product." *United States v. Generix Drug Corp.,*

460 U.S. 453, 454, 103 S.Ct. 1298, 1299, 75 L.Ed.2d 198 (1983). Under the Act, the term "drug" does not refer merely to the active ingredient in a drug product, but to the entire product.

ing in the incidence of subacute intestinal infections."). 21 U.S.C. § 321(g)(1) defines "drugs" as:

(A) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals.

The government relies on § 321(g)(1)(B) and (C) in arguing for reversal in the instant case. Its brief states that the issues presented here are whether the product Pets Smellfree is a drug under 21 U.S.C. § 321(g)(1)(B) or (C). Brief of Appellant United States of America at 2, 10–11. The complaint below alleged that Pets Smellfree was an adulterated and misbranded animal drug under the Act. Any new animal drug must be the subject of a new animal drug application, and reviewed and approved by the FDA, or be exempt from the filing requirement before it may be shipped in interstate commerce. Any unapproved new animal drug is deemed unsafe and adulterated. *See* 21 U.S.C. § 360b(a)(1) and § 351(a)(5). Moreover, a drug is misbranded, *inter alia*, if it is manufactured, etc., in any establishment not registered under 21 U.S.C. § 360. *See* 21 U.S.C. § 352(*o*).

■ In reviewing the FDA's determination that Smellfree is a drug, we must be guided by the directives regarding judicial review of administrative agency interpretations of their organic statutes laid down by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*

467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Those directives require that we first determine whether Congress has directly spoken to the precise question at issue. If the congressional intent is clear, we must give effect to that intent. If the statute is silent or ambiguous on that specific issue, we must determine whether the agency's answer is based on a permissible construction of the statute. *See* 467 U.S. at 842–43, 104 S.Ct. at 2781; *N.L.R.B. v. Viola Industries—Elevator Div., Inc.,* 979 F.2d 1384, 1393 (10th Cir.1992) (en banc). Remedial legislation such as the Food, Drug, and Cosmetic Act is to be given a liberal construction consistent with the Act's overriding purpose to protect the public health. *United States v. An Article of Drug Bacto–Unidisk,* 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969).

With this general framework about the facts, the issues and our review in mind, we turn to the specific contentions of the parties on the issues presented under § 321(g)(1)(B) and (C).[3]

**B.**

■ PSF argues that the district judge properly ruled that Smellfree was not intended to cure, mitigate or prevent disease. PSF cites the following statement from the judge's Memorandum Decision and Order at 9:

3. *Presence of small amounts of the antibiotic CTC in PSF*

Notwithstanding the above, the United States asserts that because CTC is a classified antibiotic, any compound containing CTC in *any* concentration must be classified as a drug under either Subsection (B) or Subsection (C).

---

3. Our decision is based on subsections (B) and (C), and not on subsection (A) and the fact that CTC is listed in the United States Pharmacopoeia at 298–301 (XXII ed. 1990). It has been said that because the Pharmacopoeia lists such a broad range of chemicals (many of which, like salt and water, are not drugs in all their forms), the mere fact of such listing should not be dispositive that such chemicals are drugs under the Act. *See, e.g., National Nutritional Foods Ass'n v. Mathews,* 557 F.2d 325, 337 & n. 11 (2d Cir. 1977). *But see United States v. Dianovin Phar-*

*maceuticals, Inc.,* 342 F.Supp. 724, 728 (D.P.R. 1972), *aff'd* 475 F.2d 100 (1st Cir.), *cert. denied,* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 65 (1973); *United States v. Articles of Drug, etc.,* 263 F.Supp. 212, 215 (D.Neb.1967). Such listing in the Pharmacopoeia has been treated as some evidence that the substance is a drug under the Act. *See AMP, Inc. v. Gardner,* 275 F.Supp. 410, 414 (S.D.N.Y.1967), *aff'd* 389 F.2d 825 (2d Cir.), *cert. denied,* 393 U.S. 825, 89 S.Ct. 86, 21 L.Ed.2d 95 (1968).

Under Subsection (B), the court agrees that the presence of CTC is [sic] PSF in some limited way may be used to treat or prevent disease. However, when a drug is only a small part of an article and constitutes a mere sub-therapeutic dose, the presence of the drug does not by itself demonstrate objective intent to treat disease. This court finds that the non-therapeutic uses outweigh the therapeutic uses of the article and that the presence of CTC under the totality of the circumstances does not demonstrate an intent to treat disease under § 321(g)(1)(B). (emphasis in original).

Essentially, PSF argues that the dosage of CTC contained in Smellfree is too small to have any therapeutic action, *i.e.* it is "subtherapeutic," and therefore Smellfree cannot be classified as a drug. We cannot agree.

■ The fact that a drug is given in subtherapeutic doses does not prevent its being classed as a drug under the Act. It has been noted that "[s]ubtherapeutic, long-term application of antibiotics in animals is usually intended to promote faster growth, improve feeding efficiency, *and limit disease outbreaks." See United States v. An Article of Drug Consisting of 4,680 Pails,* 725 F.2d 976, 988 n. 27 (5th Cir.1984) (emphasis added). Here it was stated by Dr. Parkhie that "[a] subtherapeutic dose of CTC can be used to prevent diseases in animals. Likewise, a subtherapeutic dose could cure, treat or mitigate a subclinical disease, a mild disease which has not yet produced any signs or symptoms." Affidavit of Dr. Parkhie at 5, R. at 219.[4]

On the other hand, we note that PSF's consultant, Dr. Marcus,[5] stated that because "each prescribed dosage of Pets Smellfree contains less than the minimum therapeutic dosage of chlortetracycline for dogs and cats, Pets Smellfree contains "sub-therapeutic" dosages of chlortetracycline. A sub-thera-

peutic dosage is an amount that is insufficient to cure or treat a disease." R. at 162.

We doubt that the statements of Dr. Marcus or other matters relied on by PSF actually raised a genuine issue of material fact under § 321(g)(1)(B). However, even if a factual issue is presented on that theory concerning Smellfree, the government argues that the labeling and marketing claims made by PSF make the substance a drug under § 321(g)(1)(B) in any event. We must agree. The courts have upheld similar arguments. *See United States v. Article Consisting of 36 Boxes, etc.,* 415 F.2d 369 (3d Cir.1969) ("regardless of the actual physical effect of a product, it will be deemed a drug if the labeling, including separate promotional claims, attributes characteristics to the product that would bring it within the Act's definition.") (citing *Kordel v. United States,* 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948)); *United States v. An Article ... Sudden Change,* 409 F.2d 734, 739 (2d Cir.1969) (same). PSF's labeling and promotional materials claim it will eliminate odor from bad breath and the animal's waste. Declaration of Lloyd W. Beaston, Compliance Officer for the United States, R. 70, 98. Mr. Beaston attached one advertisement stating: "We know it works because it cured our 'smelly beast.'" Dr. Parkhie's Affidavit stated that pet odors are usually associated with dermatological disorders, otic and perineal infections, metabolic diseases, and oral/dental diseases, such as decay, plaque and gingivitis. "These pet odors therefore are due to bacterial contamination. Removal of these bacteria to stop pet odors constitutes prevention or treatment of a disease." Affidavit of Dr. Parkhie, R. at 55.

In sum, we are convinced that Smellfree was intended for use in the cure, mitigation, treatment or prevention of disease in animals. There being no issue of material fact on this question, we hold that the summary judgment in favor of PSF under

---

4. Dr. Parkhie is a Doctor of Veterinary Medicine, holding a Master's of Science Degree in Reproductive Physiology and a Degree of Doctor of Philosophy in Animal Physiology. He specializes in Veterinary Clinical Pharmacology and is a Veterinary Medical Officer in the Center for Veterinary Medicine of the FDA. R. at 216.

5. Professor Marcus is a Professor Emeritus of Microbiology and Immunology at the University of Utah School of Medicine, holding a Doctor of Philosophy Degree in Microbiology and Immunology.

§ 321(g)(1)(B) was error and that instead summary judgment on this issue should have been entered for the government.

## C.

▮ PSF also maintains that the government's evidence does not show that Smellfree was intended to affect the structure or function of animals. It says again that the evidence was that Smellfree contained nontherapeutic amounts of Tetracycline. Brief of Appellee at 16. The government points to the affidavits demonstrating that the use of CTC will reduce the normal levels of bacteria in the animal's intestine and that this can affect the way the animal's body functions.

We must agree with the government on this issue also. As noted, Dr. Parkhie's Affidavit stated that the therapeutic or subtherapeutic doses of Smellfree are likely to reduce the number of bacteria in the digestive system and oral cavities of the animal. "*Elimination of the 'normal' bacterial flora will affect the function of the animal's body.*" R. at 218. The Affidavit of Dr. Stanley Marcus stated that the subtherapeutic dosage prescribed for Smellfree is an amount insufficient to cure or treat a disease; he stated, however, that the Smellfree dosages "reduce the number of bacteria in the digestive systems and oral cavities of pets. The reduction of bacteria reduces the production of malodorous substances by the pet, while not wholly eliminating the presence of bacteria in the digestive tract and oral cavity." Marcus Affidavit, R. at 162. We are persuaded that the record clearly establishes that Smellfree is intended to affect a bodily function of animals, their digestion and elimination function. Again, we note the labeling claims, such as that PSF stops "odors at the source," and that it is "an absolute revolution in pet odor control." Beaston Declaration, R. at 96, 98. *See Nutrilab v. Schweiker,* 713 F.2d 335, 339 (7th Cir.1983) (Starch blockers indisputably satisfy [§ 321(g)(1)(C)'s] requirement for they are intended to affect digestion in the people who take them.")

PSF relies upon *E.R. Squibb and Sons, Inc. v. Bowen,* 870 F.2d 678 (D.C.Cir.1989). PSF argues that *Squibb* held that Mysteclin was not a "structure or … function" drug, and that "structure or … function" drugs were those having only physiologic effects, such as antifat remedies. PSF relies on the portion of *Squibb* stating that the suppression of growth of nonhuman organisms in the body does not affect the structure or function of the body. *Id.* at 682. Brief of Appellee at 14–16. The government responds that *Squibb* supports its position that Smellfree is a drug because the claim that Mysteclin would suppress the growth of resident organisms in the gastrointestinal tract demonstrated intended use in the cure, mitigation, treatment or prevention of disease. Brief of Appellant at 28. We must agree that this reasoning in *Squibb* supports the position of the government that PSF is a drug within § 321(g)(1)(B). We also are in agreement with the government that PSF's claims that Smellfree will eliminate odors resulting from the digestive and elimination function of the animal's body bring Smellfree within the scope of § 321(g)(1)(C). *See Squibb,* 870 F.2d at 683 (noting that sleep *and digestion* are functions of the body). *Squibb* did construe the "structure or … function" definition rather narrowly, unlike the "disease in man" definition. *Id.* at 682. Nevertheless, the claims advanced in the PSF's promotional materials firmly support a holding that Smellfree was intended to alter a function of the animal's body. *See Article Consisting of 36 Boxes, etc.,* 415 F.2d at 371.

In sum, we feel the showing of intent to alter a function of the animal's body by the use of Smellfree is clearly demonstrated by the record. Hence, Smellfree is also a drug within the meaning of § 321(g)(1)(C).

## III

We hold that PSF comes within the drug definition of 21 U.S.C. § 321(g)(1)(B) since it is intended to cure, mitigate, treat or prevent disease in animals. Further, we hold PSF is within the drug definition of § 321(g)(1)(C) because it is intended to affect a function of the body of animals—digestion and elimination. Since there is no issue of material fact raised regarding the question of Smellfree's status as a drug, the government was entitled to summary judgments a matter of law. Hence PSF's motion for summary judgment

should have been denied and that of the government should have been granted.[6]

Accordingly, the summary judgment in favor of PSF is **REVERSED.** The case is **REMANDED** with directions to enter summary judgment in favor of the United States, determining that Pets Smellfree is a drug under the Act, and to conduct further proceedings consistent with this opinion to consider whether the product is an adulterated or misbranded drug.[7]

---

6. Since there is no material dispute as to the facts, and the government is entitled to judgment on those facts, it is proper to order entry of summary judgment in favor of the government. *See Schmidt v. Farm Credit Services,* 977 F.2d 511, 513 n. 3 (10th Cir.1992).

7. The government's Memorandum in support of its motion for summary judgment below argued that Pets Smellfree is both an adulterated new animal drug and a misbranded new animal drug. Memorandum in Support of Plaintiff's Motion for Summary Judgment at 25; Record Appendix of Appellant United States of America at 47. However, in its opening brief on this appeal, the government does not request that summary judgment be directed in its favor on these adulteration and misbranding issues. The government asks only that this court "hold that the product is a drug, reverse the district court's grant of summary judgment, and remand the case for consideration of whether Pets Smellfree is an adulterated and misbranded drug." Brief of Appellant United States of America at 29. At oral argument, government counsel took that same position—that the case should be remanded for a determination on misbranding or alteration. Hence the judgment which we direct to be entered below for the government should only determine that Pets Smellfree is a drug within the meaning of the Act. As stated, further proceedings should then be conducted to determine the adulteration and misbranding issues and to make final disposition of the case.