UNITED STATES v. 23, MORE OR LESS, ARTICLES etc.

No. 4, Docket 21863.

United States Court of Appeals Second Circuit.

Submitted Oct. 9, 1951.

Decided Nov. 7, 1951.

James M. McInerney, Asst. Atty. Gen., Frank J. Parker, U. S. Atty., Morris K. Siegel, Asst. U. S. Atty., Brooklyn, N. Y., for libellant-appellant, Vincent A. Kleinfeld, Atty., Dept. of Justice, Washington, D. C., Alvin L. Gottlieb, Selma M. Levine, Attys., Federal Security Agency, Washington, D. C., of counsel.

Ralph Slater, claimant, pro se.

Before AUGUSTUS N. HAND, CHASE and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The United States of America filed a libel of information in the court below under § 304(a) of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1044, 21 U.S.C. § 334(a), seeking the seizure and condemnation of certain phonograph records, and various accompanying items of printed and

graphic matter, all of which were moving or had moved in interstate commerce. The phonograph records are entitled in part "Time To Sleep," and their accompanying literature consists of (1) an album in part entitled, "De Luxe Records Presents Time To Sleep a Tested Method of Inducing Sleep Conceived and Transcribed by Ralph Slater," (2) a leaflet in part reading: "Sleep With This Amazing Record 'Time To Sleep,'" (3) a certificate entitled "Sleep Guaranteed," (4) display cards entitled "De Luxe Records Presents Time To Sleep," and (5) a poster headed "A 'Dream Girl' Shows a New Way to Dreamland." The court below after full hearing without a jury filed a memorandum opinion in accordance with which it entered a final decree ordering the libel dismissed and the libeled property returned to Ralph Slater, the claimant. The United States thereupon took this appeal.

Two questions are presented. The first is whether a phonograph record is a "device" within the meaning of § 201(h) of the Act. 21 U.S.C.A. § 321(h). The second question, which arises only if the first is answered in the affirmative, is whether the records in question are misbranded within the meaning of § 502(a) id. 21 U.S.C.A. § 352(a).

■ Section 201(h) of the Act under consideration provides in material part that "The term 'device' * * * means instruments, apparatus, and contrivances, including their components, parts, and accessories, intended (1) for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; or (2) to affect the structure or any function of the body of man or other animals."

Certainly a phonograph record, if not itself an instrument or an apparatus, is a contrivance. And moreover, it is without question a component, part or accessory of a phonograph, or like record playing machine, which in its turn is without any doubt at all an instrument, apparatus or contrivance. The real question therefore is whether the libeled records were intended for either of the uses described in (1) or (2) of § 201(h), supra. Obviously the records were intended for use in the cure, mitiga-

tion, treatment or perhaps prevention of insomnia. But the medical experts who testified at the trial were agreed that insomnia is not a disease, but is a symptom of a disease, usually although not necessarily a neurological one, or of an emotional disturbance of some kind. Thus it may be argued that the records do not fall within the coverage of (1) above.

However, all the expert witnesses who testified on the point were unanimous that sleep is a function of the body, or body and mind, of man and other animals, and this testimony brings the records within the terms of (2), supra, for their intended use was to affect that function, i. e. to induce sleep in those who needed it but had difficulty in obtaining enough. Without further laboring the point it will suffice to say that the records involved are "devices" within the meaning of § 201(h) (2) of the Act.

The question therefore arises whether the records are misbranded within the meaning of § 502(a) of the Act in that their labeling, which term includes not only the actual labels on the records and their containers or wrappers, but also any other written, printed, or graphic matter accompanying them (§ 201(m) id.), "is false or misleading in any particular."

The sounds produced by the record when played upon any standard phonograph or record player are the voice of Ralph Slater, the claimant, superimposed upon faint background music. On the side of the record intended to be played first the claimant explains how the record is to be used, in the course of which he says: "You may not be able to teach yourself to sleep, yet listening to me and believing as you must believe, that I can help you, makes insomnia a thing of the past."

The statements on the album stress Slater's "uncanny" and "phenomenal" power to induce sleep by suggestion, even though not personally present, his long and arduous training, and the fact that his method is well tested and efficacious "in the treatment of unusual, difficult psychoneurotic cases." In the leaflet it is stated, among other things, that "Mr. Slater, who has put people to sleep on the stage, and by various powers of remote contact, has translated his power

into this record which will be invaluable to everyone who suffers from insomnia." The certificate guarantees that the record "will induce blissful sleep in the most delightful manner," and the display card and poster, although they seem innocuous enough considered separately and apart from their context, convey the same impression.

■ Reading the foregoing labeling together, in the way it would be read by persons who might be sufficiently interested to read it at all, conveys the impression that the record is a cure-all for insomnia from whatever cause, or at least is an adequate substitute for medication.[1] This is not only misleading but also false for the evidence clearly establishes that the record can not possibly do as much. Indeed the expert witnesses called by the Government, who had made actual tests of the record on persons suffering from insomnia, testified unanimously that it proved wholly ineffectual, and one of them went even further and said that it might in some cases be actually harmful in that a person might resort to it for trial and in so doing postpone medical care and treatment for the cause of the insomnia from which he suffered. And the medical experts called by the claimant did not flatly contradict the Government's evidence. Although they said that in their opinion based upon hearing the record a few times (they had not conducted actual tests) it might prove helpful in certain cases of insomnia, they freely admitted on cross-examination that some of the statements in the labeling were "extravagant." For instance they would by no means go so far as to say, indeed they denied, that the record "makes insomnia a thing of the past," or that it would be "invaluable to everyone who suffers from insomnia." Thus it cannot be said that the labeling of the record is not "false or misleading in any particular" and from this it follows that the record is misbranded within the meaning of § 502(a) of the Act.

The decree of the District Court is vacated and set aside and the case is remanded to that Court for further proceedings consistent with this opinion.

---

1. Indeed on the inside of the front cover of the album the statement is made in a testimonial that Slater's "aim is to discourage the fad for sleeping pills."