**UNITED STATES of America,
Libelant,**

v.

**An ARTICLE CONSISTING OF 36 BOXES, MORE OR LESS, etc.; LABELED in Part: "LINE AWAY, TEMPORARY WRINKLE SMOOTHER, COTY", etc. Chas. Pfizer & Co., Inc., Claimant.**

**No. 1873.**

United States District Court
D. Delaware.

April 23, 1968.

Alexander Greenfeld, U. S. Atty., Wilmington, Del., for libelant.

Thomas S. Lodge, Connolly, Bove & Lodge, Wilmington, Del., for claimant, William F. Weigel, Marie V. Driscoll, Rogers, Hoge & Hills, New York City, of counsel.

## OPINION

STEEL, District Judge.

This civil *in rem* seizure action was instituted under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. (1964) by the United States against 36 bottles of "Line Away Temporary Wrinkle Smoother" and labels and leaflets pertaining to it. The Act authorizes the United States to bring a libel against any misbranded drug using the channels of interstate commerce. It likewise authorizes the United States to bring a libel against any "new drug", as defined in 21 U.S.C. § 321(p), similarly used, unless an application filed pursuant to 21 U.S.C. § 355 has been approved and is effective with respect to the drug. Purporting to act under these authorizations the United States Marshal seized the articles in question. After the seizure, Chas. Pfizer & Co., Inc. filed a claim to the articles, and answered the libel.

Before the Court for decision are cross-motions for summary judgment filed by the United States, libelant, and by Chas. Pfizer & Co., Inc., claimant. The motions are based upon the unverified pleadings, claimant's answers to libelant's interrogatories, and affidavits of Heinrich, Lubowe, Marzulli, Heune, Epstein, Frank, Robinson, Weigel and Liska.

The libel alleges that Line Away, having been shipped in interstate commerce, is:

1. A "drug" within the meaning of 21 U.S.C. § 321(g) (3) [subsequently redesignated as 21 U.S.C. § 321(g) (1) (C) (1964), as amended, (Supp. I 1965) by Pub.L. No. 89–74, § 9(b) (1964), 79 Stat. 227 (1965)]; and

2. A "new drug" within the meaning of 21 U.S.C. § 321(p), and hence was shipped in violation of 21 U.S.C. § 355

(a), since no new drug application filed pursuant to 21 U.S.C. § 355(b) has been approved and is effective with respect to it; and

3. A misbranded drug:

(a) within the meaning of 21 U.S.C. § 352(a), in that its labeling contained false and misleading statements with respect to its effectiveness in eliminating facial wrinkles; and

(b) within the meaning of 21 U.S.C. § 352(e) (1) (A) (ii) in that the label fails to bear the established name of each of the two or more active ingredients from which it is fabricated.

The answer admits that the seized articles were shipped in interstate commerce, are within the jurisdiction of the Court, and that it has a "temporary effect on wrinkles". The remaining allegations of the libel are denied.

### The "Drug" Issue

The Federal Food, Drug, and Cosmetic Act is a regulatory act which deals with four categories of articles: food, drugs, devices and cosmetics. The threshold question is whether Line Away is a "drug" within the meaning of the Act. The United States asserts that it is; claimant that it is not. Both parties concede that if Line Away is not a drug the Act is inapplicable, the other charges must fail, and the seizure is invalid.

Section 321 defines a drug for purposes of the Act in pertinent part, as follows:

"(g) (1) The term 'drug' means * * * (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals;"

 The United States does not claim that Line Away is intended to affect any function of the body. It does allege that it is intended to affect the structure of the body. The intended use of a product determines whether or not it falls within the statutory category of a drug. United States v. Hohensee, 243 F.2d 367 (3rd

Cir.), cert. denied, 353 U.S. 976, 77 S. Ct. 1058, 1 L.Ed.2d 1136 (1957).

Line Away is a protein lotion manufactured from bovine albumen and was promoted and sold by claimant as a temporary wrinkle smoother. It is used by applying it to the skin and allowing it to dry. It is intended, says claimant, to smooth, firm and tighten the skin temporarily and to make wrinkles less obvious.[1] This concession is substantiated by the product labels, promotional material, advertising and the like, which are relevant sources for determining the intended use of a product. United States v. Hohensee, supra; United States v. Article of Drug * * * Designated B-Complex Cholinos Capsules, etc., 362 F. 2d 923 (3rd Cir. 1966).

Obviously, by intending to smooth, firm and tighten the skin, Line Away has as its objective affecting the structure of the skin. Hence, it falls within the literal definition of a drug in section 321 (g) (1) (C).

It is the claimant's contention that despite the express coverage of the statute, it was never intended to encompass a product such as Line Away which, it asserts, is nothing more than a cosmetic to beautify, adorn and alter the user's appearance. Claimant argues that a construction of the Act which will embrace Line Away will do violence to a common sense interpretation and will be inconsistent with the purposes and policies of the Act as shown by its Congressional history.

Under the Pure Food Act of 1906, 34 Stat. 768, a drug was defined substantially as it is today, except clause (C) of section 321(g) (1), which is of present concern, had no counterpart. The Act of 1906 defined a "drug" to include,

"all medicines and preparations recognized in the United States Pharmacopoeia or National Formulary for internal or external use, and any substance or mixture of substances intended to be used for the cure, mitigation,

---

1. Brief for Claimant at 3, 9.

or prevention of disease of either man or other animals."

As early as 1917 it was recognized that this limited definition of a "drug" made it difficult to control injurious cosmetics, fraudulent mechanical devices used for therapeutic purposes, and fraudulent remedies for obesity and leanness. See, United States Department of Agriculture, Food and Drug Administration, Annual Report for the Year Ended June 30, 1933, in Dunn, Federal Food, Drug and Cosmetic Act 25 (1938). This definitional deficiency was remedied by the Federal Food, Drug and Cosmetic Act of June 25, 1938, Pub.L. No. 75–717, 52 Stat. 1040 (1938). In it the definition of a drug was expanded to include that found today in section 321(g) (1) (C).[2]

■ Prior to passage of the Act in 1938, an unsuccessful attempt was made to expand the drug definition in the 1906 Act by referring to, "all substances and preparations, other than food and cosmetics intended to affect the structure or any function of the body."[3] The 1938 Act, however, eliminated "and cosmetics" from the excluded category, but permitted "food" to remain in it. So the law remains today. This is tacit legislative recognition that a "drug" does not necessarily exclude a cosmetic. Claimant concedes that the terms "drug" and "cosmetic", as used in the statute are not necessarily mutual exclusive, but that a product may be both a cosmetic and a drug if it falls within the statutory definition of both.[4]

Conceding, therefore, that Line Away is a cosmetic within the meaning of the Act, and also that it is intended to affect the structure of the body, the critical question is whether Congress intended to include such articles in its drug definition. The legislative history of the 1938 Act discloses that, as claimant contends, the law which broadened the drug definition was enacted in part, and perhaps in important part, to control fraudulent remedies for obesity and leanness. But it also discloses that the expansion of the drug definition was not aimed solely at these remedies. They were merely illustrative of a comprehensive class of preparations which were intended to affect the structure or function of the body to which the legislation was directed.[5]

Claimant admits as much. It argues, however, that since it was the fraudulent remedies for obesity and leanness which prompted the expansion of the drug definition in 1938, Congress in drafting the new law must have had a mind only the kind of effect which remedies for obesity and leanness produce on the body.[6]

From this premise claimant argues that Congress had no desire that cosmetics which were intended to have an "incidental" or "insignificant" effect on the bodily structure should be included within the drug definition. These limitations are suggested by claimant, not by Congress. The intended effect of some products on the structure of the body may be so "incidental" to the essential objective of the product as to fall outside of the ambit of the statute.[7] But here, a

---

2. At the same time, Congress brought devices and cosmetics into the Act. The definitions of devices and cosmetics are found at 21 U.S.C. § 321(h), (i).

3. S. 5, 74th Cong., 2d Sess. (1936), as amended by the House of Representatives.

4. Claimant's Reply Brief at 6.

5. See, for examples, Senator Copeland's explanation of the purpose and scope of the change in the law. S.Rep. No. 361, 74th Cong., 1st Sess. (1935), quoted in Dunn, supra at 239. See also, H.R.Rep. No. 2755, 74th Cong., 2d Sess. (1936),

quoted in Dunn, supra at 552–53; testimony of W. G. Campbell, Chief of Food and Drug Administration, Department of Agriculture, in Hearings Before a Subcommittee of the Senate Committee on Commerce on S. 1944, 73rd Cong., 2d Sess. at 13 (1933).

6. Claimant's Reply Brief at 4.

7. Federal Trade Commission v. Liggett & Myers Tobacco Co., 108 F.Supp. 573 (S.D.N.Y.1952), aff'd mem., 203 F.2d 955 (2d Cir. 1953), appears to be such a case. There the Court held that although Liggett & Myers Tobacco Co. al-

basic object of Line Away is to smooth, firm and tighten the skin. That this aim is of temporary duration brings it within no statutory exception.

Claimant asserts that products commonly claimed to have a smoothing, firming or tightening action, or to have an effect on lines and wrinkles, are considered in the trade and by customers to be cosmetics and not drugs.[8]

Irwin Lubowe, M.D., an expert in the dermatology field, states that he has examined the labeling of Line Away, that in his opinion it is a cosmetic and not a drug, and that products which, like Line Away, are only intended to temporarily improve the appearance of the skin, have been traditionally and universally regarded as cosmetics and not as drugs.[9]

Herbert Heinrich, Ph.D., the director of Cosmetic Research for the Coty Division of claimant, an expert in chemistry as it relates to cosmetics, states that Line Away, like the film of many other cosmetics which are applied to the skin, will lessen the evaporative process of moisture on the surface of the skin. He states further that products of this type have traditionally been considered to be cosmetics and never, because of their moisture retention effects, have they been deemed to be drugs.[10]

For present purposes it is not important that the cosmetic trade and users, or indeed experts such as Heinrich and Lubowe, should characterize products such as Line Away as cosmetics and not drugs. The relevant question is what Congress intended "drugs" to encompass. This is a legal question to be judicially answered in the light of the wording and purpose of the legislation. The extremely broad definition of the word in the statute discloses a Congressional intent that its scope should not be restricted to products commonly called drugs. AMP Inc. v. Gardner, 389 F.2d 825 (2d Cir. February 13, 1968).

Nor is it of significance that Line Away is described as a cosmetic on some of the labels, selling literature or advertisements. The essential question is whether the product falls within the definition of a drug in the Act. See, United States v. Articles of Drug, etc., 263 F.Supp. 212 (D.Neb.1967).

Judicial liberality in construing the Act is revealed by the decision in United States v. 23, More or Less, Articles, etc., 192 F.2d 308 (2d Cir. 1951). There phonograph records represented as conducive to sleep in instances of insomnia were held to be "devices" which "affect * * * [a] function of the body of man", within the meaning of 21 U.S.C. § 321(h).[11]

A Court should be reluctant to give the Act a narrow construction, touching as it does the lives and health of people who are largely beyond self-protection. United States v. Dotterweich, 320 U.S. 277, 280, 64 S.Ct. 134, 88 L.Ed. 48 (1943). After noting this fact and pointing out that the purposes of the Act "should infuse [its] construction", the Supreme Court, in 62 Cases, etc., of Jam v. United States, 340 U.S. 593, 596, 71 S.Ct. 515, 518, 95 L.Ed. 566 (1951) said:

> "After all, Congress expresses its purpose by words. It is for us to ascertain —neither to add nor to subtract, neither to delete nor to distort."

Guided by these precepts, and finding no genuine issue of relevant fact in the record, Line Away is, as a matter of law, a drug within the meaning of section 321(g) (1) (C).

---

leged that Chesterfield cigarettes had a soothing property, they were not a "drug" as defined in the Federal Trade Commission Act, which definition is identical to that in the Food, Drug, and Cosmetic Act.

8. Affidavit of Marilyn Liska.

9. Affidavit of Irwin I. Lubowe, M.D.

10. Affidavit of Herbert Heinrich.

11. Section 321(h) defines "devices" as meaning instruments, "intended to affect the structure or any function of the body of man or other animals." The "device" definition in section 321(h) is the same, in relevant part, as the "drug" definition in section 321(g) (1) (C).

United States v. Article of Drug * * Bacto Unidisk, 392 F.2d 21 (6th Cir. March 29, 1968), is not inconsistent with this conclusion, dealing as it does with the "drug" definition in section 321(g) (1) (B), and not section 321(g) (1) (C), as is presently involved.

### Misbranding Issue

Claimant admitted at oral argument that if Line Away is a drug (as it has been found to be), it has been misbranded for the reason that section 352(e) (1) has not been complied with.[12] On this issue the Government is entitled to summary judgment as a matter of law. This makes it unnecessary to determine whether 352(a) was violated by the alleged use of false and misleading statements on the labels of Line Away.

### "New Drug" Issue

If a drug is a "new drug" as defined in 21 U.S.C. § 321(p), it may not be introduced into interstate commerce unless an application filed pursuant to subsection (b) of 21 U.S.C. § 355 is effective with respect to it. 21 U.S.C. § 355(a). This condition has not been met with respect to Line Away, since claimant contends that Line Away is not a "new drug".

21 U.S.C. § 321(p) (1964), defines "new drug" as:

(1) Any drug the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, and suggested in the labeling thereof * * *[13]

Under the statute the question is not whether in point of fact Line Away is unsafe or ineffective. It is whether qualified experts generally recognize Line Away to be unsafe and ineffective for its recommended uses. United States v. Allan Drug Corp., 357 F.2d 713 (10th Cir. 1966), cert. denied, 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 131 (1966); Merritt Corp. v. Folsom, 165 F.Supp. 418 (D.D.C.1958).

■ In ruling upon claimant's motion for summary judgment the evidence favorable to the United States must be accepted as true. The United States has filed affidavits by Huene, Marzulli, Epstein, Frank and Robinson. All are medical doctors except Marzulli, who is a Ph. D. in physiology. According to their uncontroverted background and experience stated in their affidavits, all are qualified to speak on the "general recognition" question.

Phylis A. Huene, M.D. states:

"It is my opinion, based on training, education, study of the medical literature, personal experience and attendance at dermatological meetings, that articles containing bovine albumen such as 'Coty Line Away' are not generally recognized as safe and effective among experts qualified by scientific training and experience to evaluate the safety and efficacy of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in its labeling * * *"[14]

The opinion expressed by William L. Epstein, M.D., is identical to Dr. Huene's, except that Dr. Epstein's opinion relates directly to Line Away and not merely, as did Dr. Huene's, to articles containing bovine albumen such as Coty Line Away. Francis N. Marzulli, Ph.D., does not refer to the effectiveness of articles con-

---

12. Transcript of Argument, March 5, 1968 at 37, 38.

13. The "grandfather clause" exempting certain drugs marketed prior to October 1962, from that definition, does not apply here, since Line Away has been marketed only since April 1964. Claimant's Answer to Libelant's Interrogatory 27(a).

14. The claimant concedes that for the United States to establish that Line Away is a "new drug" it need only show that "bovine albumen, the primary ingredient in Line Away, is not *generally recognized* as safe and effective." Claimant's Brief at 25.

taining bovine albumen. He does state, however, that such articles are not generally recognized by experts to be safe for use under the conditions recommended on the Line Away labels. The affidavits of Lawrence Frank, M.D. and Harry M. Robinson, M.D., state that qualified and informed dermatologists generally fail to recognize that Line Away is safe and effective for use in smoothing out or eliminating wrinkles and lines, either permanently or temporarily.

 There is no merit to claimant's contention that the affidavits filed by the United States are unworthy of acceptance because claimant did not have an opportunity to cross examine the affiants. No application was made by claimant to cross examine affiants by taking their depositions. Affidavits, without cross examination of the affiants, have been accepted as competent opinion evidence on a "new drug" issue in connection with a motion for summary judgment. United States v. 354 Bulk Cartons * * * Trim Reducing-Aid Cigarettes, 178 F.Supp. 847 (D.N.J.1959); AMP Inc. v. Gardner, 275 F.Supp. 410 (S.D. N.Y.1967, aff'd, supra. A motion for summary judgment must be decided on the record presented on the motion, not on evidence which is potentially possible. Shafer v. Reo Motors, 205 F.2d 685 (3rd Cir. 1953).

Claimant further contends that Dr. Huene's affidavit is inconsistent with paragraph 5 of the libel wherein it is alleged that Line Away does in fact have a temporary effect on wrinkles. This, too, is without merit. Dr. Huene swore that qualified experts do not generally recognize that articles such as Line Away are effective and safe if used as recommended by claimant. The libel contains no allegation at variance with this statement.

The affidavits of the United States, if accepted as they must be in considering claimant's motion, provide ample evidentiary support for its position that

Line Away is not generally recognized by qualified experts as being safe and effective for use as recommended by the Line Away labels. They therefore support the libelant's contention that Line Away is a new drug. Claimant's motion for summary judgment determining that Line Away is not a new drug will be denied.

In deciding the libelant's motion for summary judgment the evidence most favorable to claimant on the new drug issue must be accepted as true.

The affidavit of Herbert Heinrich, Ph. D. in chemistry, verified February 28, 1968, states without qualification that Line Away is generally recognized by qualified experts as safe and effective for its intended purpose as a temporary wrinkle smoother. Irwin I. Lubowe, M. D., in his affidavit affirms that albumen, which he states is the principal ingredient in Line Away, is generally recognized among qualified experts to be safe and effective for use for cosmetic purposes. The affidavits of Heinrich and Lubowe establish, without contradiction in the record, their qualification to speak on the subject to which they have addressed themselves. Their statements, construed most favorably to claimant as they must be, refute the libelant's contention that Line Away is a new drug.

 It is apparent that a sharp conflict exists on whether Line Away is generally recognized by experts as safe and effective for use as recommended. This conflict can not be resolved by a balancing of affidavits. A trial is necessary to resolve it, if it must be decided. It would seem, however, that the issue is now moot in view of the determination that Line Away is a drug which has been misbranded in violation of 21 U.S.C. § 352. This alone justifies a summary judgment in the libelant's favor upholding the seizure of the articles.

Let a summary judgment consistent with this opinion be prepared and submitted.