**UNITED STATES of America**

v.

**An ARTICLE of Drug CONSISTING OF 36 BOXES, MORE OR LESS, each containing 1 bottle of an article LABELED in part "LINE AWAY TEMPORARY WRINKLE SMOOTHER, COTY"**

**Chas. Pfizer & Co., Inc., Appellant.**

**No. 17415.**

United States Court of Appeals Third Circuit.

Argued April 10, 1969.

Decided July 24, 1969.

As Amended Sept. 2, 1969.

Rehearing Denied Sept. 9, 1969.

**370**

Bernard L. Segal, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (Samuel D. Slade, Philadelphia, Pa., William F. Weigel, New York City, Rogers, Hoge & Hills, New York City, on the brief), for appellant.

William W. Goodrich, Asst. Gen. Counsel, Food and Drug Division, Washington, D. C. (Alexander Greenfeld, U. S. Atty., Wilmington, Del., Joanne S. Sisk, Atty., Dept. of Health, Education, and Welfare, Washington, D. C., on the brief), for appellee.

Vincent A. Kleinfeld, Alan H. Kaplan, Stanley J. Krieger, Kleinfeld & Kaplan, Washington, D. C., Sp. Counsel to The Toilet Goods Assn., Inc. Fuller Holloway, Hamel, Morgan, Park & Saunders, Washington, D. C., counsel to The Toilet Goods Assn. Inc., as amicus curiae.

Before HASTIE, Chief Judge, and GANEY and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

This is an appeal from a judgment of condemnation entered in a seizure action under section 304 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 334. Involved is an article known as "Line Away Temporary Wrinkle Smoother, Coty," or more simply, "Line Away."

The action was initiated in the United States District Court for the District of Delaware by a Libel of Information that alleged that Line Away is a "drug" within the meaning of section 201 of the Act, 21 U.S.C. § 321(g) (1) (C), and was "misbranded" in violation of 21 U.S.C. § 352(a) in that its labeling was false and misleading, and was further "misbranded" in violation of 21 U.S.C. § 352 (e) (1) (A) (ii) in that it consisted of two or more ingredients which were not named on the label. After both the claimant, Charles Pfizer & Co., Inc. and the government had so moved, summary judgment was entered in favor of the government. This appeal followed.[1]

The sole issue before this court is whether Line Away is a "drug" within the meaning of section 201 of the Food, Drug, and Cosmetic Act.[2] So far as is

---

[1]. The libel also alleged that Line Away was a "new drug" within the meaning of 21 U.S.C. § 321(p) and was improperly introduced into interstate commerce without approval of the required application. 21 U.S.C. § 355(a) and (b). The district judge did not determine this issue, however. 284 F.Supp. 107, 113.

[2]. The order of the district court entered May 8, 1968 discloses that the only violation found was of 21 U.S.C. § 352(e) (1) (A) (ii). Therefore the verity of the labeling or advertising claims made for Line Away is not in issue here. Furthermore, the claimant conceded to the district court that if Line Away is a drug, then it was misbranded under § 352(e) (1) (A) (ii). 284 F.Supp. 112.

relevant to this case, section 201 provides:

"The term 'drug' means * * * (C) articles * * * intended to affect the structure * * * of the body of man * * *" 21 U.S.C. § 321(g) (1) (C).

The district court found that since the admitted effect of Line Away is to smooth, firm, and tighten the skin, it does "affect the structure" of the skin within the literal definition of "drug" contained in section 201. The court also observed that it could find nothing to warrant a less comprehensive construction of the language of the statute. We do not find it necessary at this time to express any opinion as to these views. For regardless of the actual physical effect of a product, it will be deemed a drug if the labeling, including separate promotional claims, attributes characteristics to the product that would bring it within the Act's definition. Kordel v. United States, 1948, 335 U.S. 345, 69 S. Ct. 100, 93 L.Ed. 52; United States v. Hohensee, 3d Cir. 1957, 243 F.2d 367, cert. den. 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136. See United States v. Article of Drug, 3d Cir. 1966, 362 F.2d 923. Nor can it be doubted that the fact that an article is a beautifying agent or "cosmetic," as is claimed here, does not preclude its also being a drug for purposes of the Act. See S.Rep. No. 361, 74th Cong., 1st Sess., reprinted in Dunn, The Federal Food, Drug and Cosmetic Act 239–240 (1938).

Accordingly we turn to an examination of the promotional claims made for Line Away. The leaflet packed in each box of Line Away contains application instructions and makes it clear, as does the promotional material, that the effect of the product is temporary, lasting only up to five hours. Prior to the instructions, however, some introductory material is included. Recited prominently in italics is the preface:

"Manufactured exclusively for Coty in the pharmaceutical laboratories of Charles Pfizer & Co., Inc."

There follows, inter alia:

"Line Away is not a face lift, not a treatment. It's a clear protein cosmetic. Contains absolutely no harmful chemicals, no hormones.

"To assure superior performance, Line Away is sealed and packaged under biologically aseptic conditions. You can be absolutely certain your protein lotion will stay fresh, super-active."

* * * * * *

"You'll feel a tingling sensation the instant you smooth Line Away on. It means that Line Away is at work—smoothing, firming, tightening."

A leaflet entitled "COTY CUES Advance Information for Coty Consultants" contains in part the following information:

"LINE AWAY is an amazing new cosmetic * * * manufactured exclusively for Coty in the pharmaceutical laboratories of Chas. Pfizer & Co., Inc.

"LINE AWAY is a colorless protein cosmetic in liquid form.

"LINE AWAY is *not* a face lift * * * *not* a treatment * * * *not* a cover up. LINE AWAY contains no harmful drugs."

* * * * * *

"LINE AWAY visibly smoothes out fatigue lines, laugh lines, worry lines, frown lines, tiny age lines, and crows feet while discouraging new lines from forming."

* * * * * *

"LINE AWAY is perfectly harmless to use as often as desired * * * two, three or more times a day. LINE AWAY is sealed and packaged under biologically aseptic conditions in the laboratories of Chas. Pfizer and Co., Inc."

The remainder of this leaflet contains use instructions and selling information. The cover of the leaflet, in addition to the title mentioned above, contains the salutation:

"Coty Invites You to Enter the Exciting World of Protein Cosmetics."

A newspaper advertisement, below three pairs of before and after pictures, contains the following copy:

" * * * Line Away is an amazing protein lotion which contains no hormones or harmful drugs. New Line Away by Coty is the only wrinkle smoother packaged under biologically aseptic conditions in the laboratories of Chas. Pfizer & Co., Inc. * * * " [3]

Another newspaper advertisement, designed to be used over a merchant's name, contains before and after pictures and the following material below them:

" * * * Line Away is an amazing protein liquid. Contains no hormones or harmful drugs. It's the only wrinkle smoother packaged under biologically aseptic conditions in the pharmaceutical laboratories of Chas. Pfizer & Co., Inc. * * * " [4]

■ We think that this promotional material attributes characteristics to Line Away that render it a drug under section 201 of the Act.

Our analysis begins with a preliminary brief examination of the product and its use. The product's critical ingredient is bovine albumin. Albumin is a simple protein found in the tissues of animals and plants. A typical source is egg white, but bovine albumin was employed here since it is more soluble in water. The product is a clear liquid which is applied externally on the face. As it dries, it forms a film and contracts. This results in the skin being smoothed. Beyond this simple mechanical operation, Line Away has no effect upon the skin.

In contrast, the promotional material is, for the most part, elaboration of the implications inherent in the description of Line Away as an "amazing protein lotion." Since protein is a principal nutrient, advertising so structured as to emphasize the protein content of the prod-uct suggests that the lotion nourishes the skin. In line with this basic suggestion, the repeated statements that Line Away is made in a "pharmaceutical laboratory" and packaged under "biologically aseptic conditions" imply that the product itself is a pharmaceutical. Characterizing the lotion as "super-active" and "amazing", creating a "tingling sensation" when "at work", "tightening" the skin and "discouraging new wrinkles from forming" strongly reinforces the impression that this is a therapeutic product, the protein content of which has a tonic or otherwise wholesome physiological effect upon the skin itself. The impression thus affirmatively created is allowed full play by avoiding any indication, other than to mention that the effect of the lotion is temporary and its frequent application is appropriate, of the exclusively mechanical operation of the film as it dries upon the skin. Even the denial that Line Away is a "hormone" or a "harmful drug", read in the context of the other representations, suggests that it is a harmless drug.

This is not to state that promotional material for cosmetic products must explain their limited mechanical operation, though, in this case, the omission aids the contrary implication of what is actually said. Moreover, we recognize that "puffery" is the fashion in much contemporary advertising and that continuing exposure to it may result in a degree of public immunity to extravagant claims. Yet, "puffery" continues, not for fun but because knowledgeable business men believe it sells merchandise. Therefore, to describe the claims made for Line Away as mere "puffery" does not make them *de minimis* in the context of this litigation.

Some "puffery" may not amount to representation of a cosmetic as a drug, but when "puffery" contains the strong therapeutic implications we find in the

3. The quoted language constitutes 50% of the textual copy in this advertisement.

4. The quoted language constitutes more than 50% of the textual copy in this advertisement.

Line Away promotional material, we think the dividing line has been crossed.[5]

The order of the district court will be affirmed.

---

5. The Second Circuit has recently considered a somewhat similar case and reached the same result in a manner not inconsistent with our views. United

States v. An Article * * *, Sudden Change, Hazel Bishop, Inc., April 8, 1969, 409 F.2d 734.