**UNITED STATES of America,**

v.

**An ARTICLE OF DRUG . . . 47 SHIPPING CARTONS, MORE OR LESS, . . . "HELENE CURTIS MAGIC SECRET . . .",**

**Helene Curtis Industries, Inc.**

**Civ. A. No. 15530.**

United States District Court, D. Maryland.

Jan. 14, 1971.

---

22. See n. 2 *supra*.

23. Transcript, 39.

24. Certificate of Public Convenience and Necessity, No. MC–128319 (sub. 1), issued April 30, 1971.

George Beall, U. S. Atty. for Dist. of Maryland, Frank S. Brocato, Asst. U. S. Atty., and John C. Young, Asst. Gen. Counsel, Food and Drug Div., Dept. of Health, Education & Welfare Administration, for plaintiff.

Bernard W. Rubenstein, Baltimore, Md., and Robert L. Wald, Carleton A. Harkrader, Joel E. Hoffman, Selma M. Levine, and Stephen M. Truitt, Washington, D. C., for defendant.

NORTHROP, Chief Judge.

This is an *in rem* civil seizure action against a quantity of Helene Curtis "Magic Secret" skin lotion which has as its purpose the smoothing of facial wrinkles. The central issue in these proceedings is whether the article seized is a "drug" within the meaning of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., and therefore sub-

ject to the regulatory provisions of the statute applicable to drugs, 21 U.S.C. §§ 351 and 352, or whether the article is only a "cosmetic" and thus subject to the requirements applicable to cosmetics, 21 U.S.C. §§ 361 and 362.

The Government filed a libel of information on April 30, 1964, alleging that the article seized is a drug within the meaning of section 321(g) (1) (C) of Title 21, United States Code, and is a new drug within the meaning of section 321(p) which was shipped in interstate commerce without an approved New Drug Application filed pursuant to 21 U.S.C. § 355(b) being in effect with respect to such drug, in violation of 21 U.S.C. § 355(a). The libel further alleges that the article was misbranded when introduced into and while in interstate commerce within the meaning of 21 U.S.C. § 352(a), in that the labeling for the article contains false and misleading statements with respect to the effectiveness of the drug for eliminating facial wrinkles; and within the meaning of 21 U.S.C. § 352(e) (1) (A) (ii), in that the article is fabricated from two or more ingredients and the label fails to bear the established name of each active ingredient.

Pursuant to monition issued by this Court, the Marshal for this District seized the article. Thereafter, Helene Curtis Industries, Inc. intervened as claimant and filed an answer to the libel. Claimant's answer admits that the article and some of the accompanying labeling were shipped in interstate commerce and that the article was within the jurisdiction of this Court. All of the remaining allegations were denied.

On July 29, 1968, the Government filed a motion, with supporting affidavits, for summary judgment, alleging that condemnation of the seized articles was warranted on the grounds that there are no genuine issues of material fact and

that, as a matter of law, the article is a drug which is misbranded and is a new drug which was introduced into interstate commerce without an approved New Drug Application effective for the drug. This Court then agreed to hold in abeyance any further proceedings in the case pending disposition of appeals in two other jurisdictions by the manufacturer and by the Government, in two cases involving similar products and dealing with similar issues.[1] On February 13, 1970, the appellate proceedings having been concluded, the Government renewed its motion for summary judgment. On May 15, 1970, claimant filed a cross-motion for summary judgment dismissing the libel on the ground that the undisputed material facts demonstrate as a matter of law that "Magic Secret" is not a drug but a cosmetic.

The pending cross-motions for summary judgment raise the issue whether "Magic Secret" is a "drug" or a "cosmetic" within the meaning of the Federal Food, Drug and Cosmetic Act.

Drugs are defined as:

(1) articles recognized in the official United States Pharmacopoeia, official Homœopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (3) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (4) articles intended for use as a component of any article specified in clause (1), (2), or (3) of this paragraph; but does not include devices or their components, parts, or accessories. 21 U.S.C. § 321(g) (1).

Cosmetics are defined as:

(1) articles intended to be rubbed, poured, sprinkled, or sprayed on, in-

1. United States v. An Article Consisting of 36 Boxes etc., "Line Away Temporary Wrinkle Smoother, Coty", 284 F.Supp. 107 (D.Del.1968), aff'd, 415 F.2d 369 (3d Cir. 1969); United States v. An Article * * * Consisting of 216 etc. Bottles, Sudden Change, 288 F.Supp. 29 (E.D.N.Y.1968), rev'd, 409 F.2d 734 (2d Cir. 1969).

troduced into, or otherwise applied to the human body or any part thereof, for cleansing, beautifying, promoting attractiveness, or altering the appearance, and (2) articles intended for use as a component of any such articles; except that such term shall not include soap. 21 U.S.C. § 321(i).

■ The definition of "drug" with which the Court is here concerned is an "article intended to affect the structure or any function of the body of man." If an article which meets the definition for cosmetics also meets that for drugs, it is subject to all of the provisions applying to drugs. United States v. An Article Consisting of 36 Boxes etc. "Line Away Temporary Wrinkle Smoother, Coty", 284 F.Supp. 107 (D.Del.1968); 21 U.S.C. § 359. Furthermore, the Court is not concerned with whether "Magic Secret" is compositionally a drug, because it is the intended use of the drug that controls. *Line Away, supra*; United States v. 354 Bulk Cartons * * * Trim Reducing-Aid Cigarettes, 178 F. Supp. 847, 851 (D.N.J.1959).

"Magic Secret" is a clear liquid derived from bovine serum albumin. When spread thinly and evenly on the skin, it forms a transparent adhesive film which shrinks uniformly as its liquid content evaporates, thereby producing a temporary wrinkle-smoothing effect. Claimant has described its effects as follows:

[A] wrinkle is a topographical configuration of skin resembling a furrow or valley and surrounding ridges. As the film contracts, its adhesive qualities cause the valley of the wrinkle to be drawn up to the level of the normal surface of the skin. When, after a period of hours, the amount of unevaporated liquid in the film is reduced below the quantity required to maintain surface tension, the film breaks down into its component solids and liquid, permitting the skin to return to a wrinkled configuration. Application of a small amount of moisture to the residual solids reforms the film, which then resumes its wrinkle-smoothing function until the evaporation process is repeated.

The Government relies upon the following representations to show that "Magic Secret" is intended to affect the structure of the body:

(1) smooths away wrinkles in minutes * * * keeps them away for hours

(2) Magic Secret is an incredible new cosmetic, a pure protein lotion that smooths away wrinkles in minutes, keeps them away for hours. Unlike any other cosmetic you have ever used, Magic Secret has the dramatic power to smooth away crowsfeet, puffy undereye circles, laugh, frown, and throat lines in just minutes.

(3) If you follow the simple directions carefully, and use Magic Secret as part of your daily beauty program, you'll see how smooth and young looking your skin can become

(4) Your skin should respond fully to Magic Secret's dramatic action, and the results can last for as long as 8 hours

(5) does indeed firm the skin to smoother younger-looking loveliness

(6) will feel an astringent sensation from Magic Secret indicating that the lotion is gently firming and toning your skin

(7) tightening and moisturizing tired skin

(8) skin quickly responds to Magic Secret's dramatic astringent activity

The Government contends that these materials clearly show that Magic Secret is intended to produce a change in the facial skin of women, and thus is intended to affect the structure of the body. It is the Government's position that any claim of physical change or effect makes the article a drug. In its original motion

the Government relied upon the decision in *Line Away, supra,* as authority for this position. Since that decision, however, a second district court, and two courts of appeals have declined to adopt such a broad reading of the definition of drug, and this Court is inclined to agree with these later courts.[2]

This case is the last of a group filed by the Government in 1964 against the bovine serum albumin products of five cosmetic manufacturers. Two of the cases advanced to the appellate level, both being resolved in favor of the Government. In *Line Away, supra,* the District Court for the District of Delaware granted summary judgment for the Government. On appeal to the Third Circuit Court of Appeals the judgment was affirmed. 415 F.2d 369 (3d Cir. 1969). In United States v. An Article Consisting of 216 Bottles, Sudden Change, 288 F.Supp. 29 (E.D.N.Y.1968), the District Court for the Eastern District of New York granted summary judgment for claimant, but on appeal, the Second Circuit Court of Appeals reversed in favor of the Government. 409 F.2d 734 (2d Cir. 1969). While this Court is not bound by these decisions from other jurisdictions, they were concerned with issues similar to those now before this Court and thus are of persuasive weight.

The District Court for the District of Delaware read the statutory definition of "drug" broadly and held that "by intending to smooth, firm and tighten the skin, Line Away has as its objective affecting the structure of the skin." 284 F.Supp. at 109. The court further held that Congress intended to include such articles in its drug definitions. *Id.* at 111. On appeal, the Third Circuit Court of Appeals affirmed, declining, however, to express an opinion as to the broad interpretation accorded to the Act by the district court. 415 F.2d at 371. The Third Circuit based its affirmance on the ground that certain of the promotional claims made for Line Away attributed characteristics to the product

that rendered it a drug. The court stated:

> In contrast, the promotional material is, for the most part, elaboration of the implications inherent in the description of Line Away as an "amazing protein lotion." Since protein is a principal nutrient, advertising so structured as to emphasize the protein content of the product suggests that the lotion nourishes the skin. In line with this basic suggestion, the repeated statements that Line Away is made in a "pharmaceutical laboratory" and packaged under "biologically aseptic conditions" imply that the product itself is a pharmaceutical. Characterizing the lotion as "super-active" and "amazing", creating a "tingling sensation" when "at work", "tightening" the skin and "discouraging new wrinkles from forming" strongly reinforces the impression that this is a therapeutic product, the protein content of which has a tonic or otherwise wholesome physiological effect upon the skin itself. 415 F.2d at 372.

The court recognized that "puffery" is prevalent in the advertising industry, and that continued exposure to it may result in a public immunity to extravagant claims; however, the court reasoned that "when 'puffery' contains the strong therapeutic implications we find in the Line Away promotional material, we think the dividing line has been crossed." *Id.* at 373.

In United States v. An Article Consisting of 216 Bottles, Sudden Change, *supra,* the United States District Court for the Eastern District of New York granted summary judgment in favor of the claimant, holding that Sudden Change was not a drug within the statutory definition. The Government retained the position which it had first enunciated in *Line Away, supra,* but the court refused to adopt such an expansive reading of the statute, stating that, "contrary to Congress' express intention, this reasoning would convert all cosmetics—

2. *See* footnote 1, *supra.*

**917**

as well as other items—into drugs." 288 F.Supp. at 34. The Second Circuit Court of Appeals reversed, holding that "so long as Sudden Change is claimed to give a 'face lift without surgery' and to 'lift out puffs' it is to be deemed a drug within the meaning of 21 U.S.C. § 321 (g) (1) (C)." 409 F.2d at 742. The Second Circuit said:

> We agree that certain claims which arguably would bring the product within § 321(g) (1) (C) have so drenched the potential consumer that even the "ignorant, the unthinking and the credulous" must be presumed able to discount their promises as typical of cosmetic advertising puffery. We cannot agree, however, with the conclusion that such immunity or skepticism somehow transfers to the promise to "lift out puffs" or give a "face lift without surgery." The references to "face lift" and "surgery" carry distinctly physiological connotations, suggesting, at least to the vulnerable consumer, that the product will "affect the structure * * * of the body * * * *" in some way other than merely temporarily altering the appearance. 409 F.2d at 741.

The test enunciated in *Sudden Change* is a sound one and indicates the proper approach to the resolution of the present question:

> In other words, with the exception of those claims which have become so associated with the familiar exaggerations of cosmetics advertising that virtually everyone can be presumed to be capable of discounting them as puffery, the question of whether a product is "intended to affect the structure * * * of the body of man * * * *" is to be answered by considering, first, how the claim might be understood by the "ignorant, unthinking or credulous" consumer, and second, whether the claim as so understood may fairly

be said to constitute a representation that the product will affect the structure of the body in some medical—or drug-type fashion, i. e., in some way other than merely "altering the appearance." *Id.* at 741–742.

Applying this test to the facts at hand, the Court is compelled to conclude that "Magic Secret" is not a drug within section 321(g) (1) (C). The only two claims made for "Magic Secret" which even approach the magnitude of the claims made in *Line Away* and *Sudden Change* are that "Magic Secret" is a "pure protein" which causes an "astringent sensation." The promotional material does not emphasize these two claims and even the "ignorant, unthinking and credulous" consumer would not be led by these references to believe that "Magic Secret" would do other than alter their appearance. It is apparent that the promotional claims made for "Magic Secret" are less exaggerated than those reported in *Line Away* and *Sudden Change*. It cannot be said that they carry the same drug connotations as found by the Second and Third Circuits. As the District Court in *Sudden Change* expressed it: "Against this background of constant exposure to puffing and extravagant claims, we cannot believe that a prospective purchaser * * expects anything other than a possibility that she may look better." 288 F.Supp. at 35–36. "Magic Secret", as demonstrated by all of the promotional material, is not intended to affect the structure of the body. There being no controversy as to any material issue of fact, summary judgment for the Government must be denied and the cross-motion of claimant for summary judgment must be granted.

Counsel will prepare an appropriate order pursuant to which judgment will be entered in favor of claimant.