[No. C026203. Third Dist. Mar. 26, 1998.]

KATHERINE MEZA, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA PHYSICIANS INSURANCE EXCHANGE,
Defendant and Respondent.

**COUNSEL**

Robert B. Lilley for Plaintiff and Appellant.

Latham & Watkins, Milton A. Miller and Michael Bruce Abelson for Defendant and Respondent.

**OPINION**

**SIMS, Acting P. J.**—In June 1994 Dr. Rumi Lakha proposed to treat a wart on Katherine Meza's left index finger by injecting melaleuca oil (commonly known as tea tree oil), a natural distillate of the leaves and bark of the melaleuca tree, into the finger. Meza agreed to this procedure. When she next visited Dr. Lakha's office, he performed the injection. Less than 24 hours later, necrosis and infection in Meza's finger, caused by the injection, forced the partial amputation of the finger.

Meza sued Dr. Lakha for malpractice. During discovery in that action (which was subsequently stayed by Lakha's filing for bankruptcy), Meza learned that Southern California Physicians Insurance Exchange (SCPIE), Lakha's malpractice carrier, was defending him but denying coverage based on the following policy exclusion: "SCPIE will . . . [not] pay damages because of any claim which arises out of or results from any of the

following: [¶] . . . The use, administration or prescription of any drug . . . disapproved or not yet approved by the United States Food and Drug Administration for treatment of human beings, unless the named insured physician has requested approval from SCPIE for the use, administration or prescription of such drug . . . , and SCPIE has given such approval in writing."

Meza then filed this declaratory relief action against SCPIE, seeking a declaration that the policy afforded coverage.

At a trial to the court, the evidence showed the following.

Melaleuca oil is a traditional homeopathic remedy intended to be applied topically to the skin. The Food and Drug Administration (FDA) has never approved melaleuca oil as a drug, and its manufacturers and distributors have never sought such approval. Dr. Lakha never requested or received approval from SCPIE to use or administer melaleuca oil.

The trial court awarded judgment to SCPIE as follows: "1. The injury to Katherine Meza's left index finger, alleged in Plaintiff's First Amended Complaint to have been caused by the acts or omissions of Dr. Rumi Lakha, arose out of or resulted from the use and administration of tea tree oil (also known as melaleuca oil). [¶] 2. Given Dr. Lakha's alleged use of tea tree oil to treat a specific indication (Ms. Meza's wart), tea tree oil is properly characterized as a 'drug,' not yet approved by the FDA, for the purposes of SCPIE's FDA Exclusion . . . ."

Meza appeals. We shall affirm the judgment.

## DISCUSSION

■ Was the trial court's interpretation of the exclusion correct? Meza contends that the court misconceived the fundamental issue. According to her, the question is not whether the FDA has approved melaleuca oil as a drug but whether it is a drug at all. If no therapeutic claims have ever been made for a substance, she reasons, then the substance never comes within the FDA's purview for approval or disapproval as a drug. Therefore it makes no sense to say that the FDA has "not yet approved" the substance as a drug—it simply does not fall within the category "drug." Furthermore, according to Meza, if a substance is not a drug as defined by the FDA, a physician's use or administration of the substance cannot turn it into a drug for purposes of SCPIE's policy exclusion. Therefore, Meza concludes, the exclusion cannot apply.

We reject Meza's conclusion because it ultimately depends on the false premise that the term "drug" denotes an inherent property which a substance either has or lacks. This premise does not comport with the ordinary understanding of the term, which would normally control our interpretation of the term in an insurance policy. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].) Nor does it comport with the definition contained in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 301 et seq. (hereafter the Act)), administered by the FDA. (Cf. *Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667 [42 Cal.Rptr.2d 324, 913 P.2d 878] [where parties have used words in an insurance policy in special or technical sense, we interpret them according to sense intended by the parties].) According to either definition, a substance's actual or intended use or administration may determine whether it is a drug within SCPIE's policy exclusion in a given set of circumstances.

We may consult the dictionary to determine the ordinary understanding of a term used in an insurance policy. (*A.B.S. Clothing Collection, Inc.* v. *Home Ins. Co.* (1995) 34 Cal.App.4th 1470, 1480 [41 Cal.Rptr.2d 166].) Doing so, we find that a drug is, among other things, ". . . a chemical substance used in the treatment, cure, prevention, or diagnosis of disease or used to otherwise enhance physical or mental well-being. . . ." (Random House Dict. (2d ed. 1987) p. 600), or ". . . a substance used as a medicine or in making medicines for internal or external use . . . ." (Webster's New Internat. Dict. (3d ed. 1993) p. 695), or "[t]he general name of substances used in medicine; any substance, vegetable, animal, or mineral, used in the composition or preparation of medicines; any substance used as a medicine" (Black's Law Dict. (6th ed. 1990) p. 497, col. 2).[1] Under all of these definitions it is the use of a substance for medical purposes, not some inherent property of that substance, which makes it a "drug." Because Dr. Lakha used melaleuca oil for a medical purpose, it was a drug in the ordinary meaning of the word, and one which had not been approved by the FDA; thus the policy exclusion applies.

If we presume, however, that the policy exclusion's reference to the FDA implicitly incorporates by reference the Act's definition of "drug" and apply that definition (*Montrose Chemical Corp., supra,* 10 Cal.4th at pp. 666-667), we arrive at the same result.

As relevant, the Act provides: "The term 'drug' means (A) articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary,

---

[1] All of these dictionaries also give the definition contained in the Act. (See *post.*)

or any supplement to any of them; and *(B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C) . . . ."* (21 U.S.C. § 321(g)(1), italics added.) It is undisputed that melaleuca oil is not recognized in any of the publications listed in 21 United States Code section 321(g)(1)(A). Thus the case turns on whether, under the facts presented here, melaleuca oil was "intended for use" in any of the ways described in section 321(g)(1)(B), (C), or (D).

Meza contends that the only intent relevant to this question is that of the substance's manufacturers or distributors, as shown by whether or not they have claimed that the substance is safe and efficacious for medical use. The statute does not say so in plain terms, however, and Meza cites no authority supporting her construction of the statute. Instead, she distills a "proposition" to this effect from federal court decisions construing the Act originally cited by SCPIE, none of which actually so holds. Those decisions, which stem either from governmental in rem seizures of "misbranded" substances or from challenges to proposed FDA regulations, cast manufacturers or distributors of challenged substances as the litigants; therefore it is necessarily the manufacturers' or distributors' intent which is in issue in those cases. (See, e.g., *Nutrilab, Inc.* v. *Schweiker* (7th Cir. 1983) 713 F.2d 335; *United States* v. *Articles of Food and Drug* (E.D.Wis. 1978) 444 F.Supp. 266; *National Nutritional Foods Ass'n* v. *Weinberger* (S.D.N.Y. 1973) 366 F.Supp. 1341, affd. (2d Cir. 1973) 491 F.2d 845; see generally, Annot., What is "Drug" Within the Meaning of § 201(g)(1) of Federal Food, Drug, and Cosmetic Act (21 USCS § 321(g)(1)) (1995) 127 A.L.R.Fed. 141.)[2] The courts in those cases had no occasion to consider the issue before us: whether a substance may be a drug under 21 United States Code section 321(g)(1), when used by a doctor to treat or cure a medical condition, even

---

[2]However, in *Meserey* v. *United States* (D.Nev. 1977) 447 F.Supp. 548 , a decision not cited by the parties, the plaintiff was a doctor who sought to import homeopathic substances from Canada. The plaintiff made a facial challenge to the constitutionality of the Act's definition of "drug" so far as it included articles listed in the Homeopathic Pharmacopoeia (21 U.S.C. § 321(g)(1)(A)), arguing among other things that homeopathic remedies are inherently incapable of harming anyone. (447 F.Supp. at pp. 552-553.) The court replied: "This argument, even if true, will not preclude a finding that [plaintiff's] remedies are 'drugs' within the meaning of the Act. Regardless of the actual physical effect of the product, once it is established that its intended use brings it within the drug definition, it will be deemed a drug for purposes of the Act." (*Id.* at p. 553.) Given the undisputed evidence that melaleuca oil is a homeopathic remedy, it would appear under the holding of *Meserey* that if Dr. Lakha had brought an action to resolve the status of melaleuca oil it would have resulted in a judicial determination that the substance, as he intended to use it, is a drug under the Act, even though not listed in the Homeopathic Pharmacopoeia.

if the substance's manufacturers and distributors have made no therapeutic claims for it. So far as the cited decisions are relevant to that issue, however, they do not support Meza's position.

The federal decisions construing the Act's definition of "drug" consistently hold that it must be read as broadly as possible. Thus "its scope should not be restricted to products commonly called drugs." (*United States* v. *Article Consisting of 36 Boxes, etc.* (D.Del. 1968) 284 F.Supp. 107, 111, affd. (3d Cir. 1969) 415 F.2d 369.) Rather, if "intended for use" as described in the statute, a substance is a drug within the statute "regardless of its inherent properties or dictionary definition." (*United States* v. *3 Cartons, etc.* (S.D-.Cal. 1952) 132 F.Supp. 569, 573.) Furthermore, in deciding this question the court may look to any source which discloses a substance's intended use. (*Id.* at p. 574.)

As we have shown, dictionary definitions of "drug" easily encompass melaleuca oil as used by Dr. Lakha; thus the Act's facially broad definition, when construed on the principles set out in the federal decisions, can hardly be more favorable to Meza's position than the dictionary definitions. Moreover, the source which discloses melaleuca oil's intended use in this case is Dr. Lakha himself: by recommending it to Meza as a treatment for her wart, he declared his intent to use it for a medical purpose. Thus it is immaterial to this case whether the manufacturers or distributors of melaleuca oil have made therapeutic claims for it. As used by Dr. Lakha with the express intent of "cur[ing], mitigat[ing], or] treat[ing]" Meza's wart (21 U.S.C. § 321(g)(1)(B)), melaleuca oil was a drug within the meaning of the Act, and one which has not yet been approved by the FDA. Therefore SCPIE's policy exclusion applies even if the term "drug" therein is construed to incorporate the Act's definition of that term. (Because the ordinary definition of "drug" and the Act's definition produce the same result, we reject Meza's contention that the existence of two definitions creates an ambiguity in SCPIE's policy exclusion which must be construed in her favor.)

Finally, Meza contends that the exclusion does not apply because it was Dr. Lakha's "method of administration" of melaleuca oil, not the oil itself, which caused her injury. This argument would more appropriately be tendered in her malpractice action. Here, the applicable policy exclusion applies where a claim arises out of the "use" of any drug not approved by the FDA. On this record, it is uncontradicted that Meza's claim arose out of the use of a nonapproved drug, as the trial court found.

## DISPOSITION

The judgment is affirmed. SCPIE shall receive its costs on appeal.

Scotland, J., and Callahan, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 10, 1998.